## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

_____

)
MARK C. STEVENSON                  )     Civ. No. 3:22-cv-00601-JBA
                                   )
        *Plaintiff,*               )
                                   )
v.                                 )
                                   )
CHRISTINE E. WORMUTH,              )
        Secretary of the Army,     )
                                   )
        *Defendant.*               )     September 30, 2022
_____  )

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

/s/ *Meghan E. Brooks*
Kathryn Bussey, Law Student Intern*
Joshua Herman, Law Student Intern*
Miriam Pierson, Law Student Intern*
Dena Shata, Law Student Intern
Meghan E. Brooks, ct31147
Michael J. Wishnie, ct27221
Jerome N. Frank Legal Services
Organization
Veterans Legal Services Clinic
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800
meghan.brooks@ylsclinics.org

*Motion for law student appearance pending.

**Oral argument is respectfully requested.**

**Table of Contents**

*INTRODUCTION* ............................................................................................................*1*

*SUMMARY OF ARGUMENT* ........................................................................................*2*

*FACTS AND PROCEEDINGS* ......................................................................................*3*

   **I.**   **Mr. Stevenson enlists in the military and is deployed to Germany.** ...........................3

   **II.**  **Mr. Stevenson develops Substance Use Disorder because of his military service.** ....................5

   **III.** **Mr. Stevenson returns to the United States with severe, untreated Substance Use Disorders, which leads to his discharge.** ...........................................................................6

   **IV.** **Mr. Stevenson rebuilds his life after struggling with Substance Use Disorder for more than two decades.** ........................................................................................................7

   **V.**  **Mr. Stevenson asks the ABCMR for relief from the stigma of his Other than Honorable discharge.** ........................................................................................................8

   **VI.** **The ABCMR rejects Mr. Stevenson's application without addressing the key arguments he raised.** ........................................................................................................10

*ARGUMENT* ................................................................................................................*11*

   **I.**   **The ABCMR's decision to deny Mr. Stevenson's application was arbitrary and capricious, and his discharge upgrade should be granted due to error and injustice.** ......................12

       *A.*  *The ABCMR's refusal to extend liberal consideration to Mr. Stevenson's Substance Use Disorder under the Kurta Memo is arbitrary and capricious.* ...................................13

       *B.*  *The ABCMR's refusal to address Mr. Stevenson's non-frivolous arguments, including about the racial discrimination he experienced in service, was arbitrary and capricious and violated statutory mandates.* ...22

   **II.**  **The ABCMR violated the Rehabilitation Act.** ...................................................25

       *A.*  *The ABCMR unlawfully discriminates against veterans with SUD.* .................................27

       *B. The ABCMR unlawfully denies veterans with SUD adequate access to the discharge upgrade process.* 30

   **III.** **The ABCMR violated Mr. Stevenson's Fifth Amendment rights to equal protection and due process.** ........................................................................................................32

       *A.*  *The ABCMR discriminates against veterans with SUD without a rational basis.* .................32

       *B.*  *The ABCMR deprived Mr. Stevenson of significant liberty and property interests without due process of law.* ........................................................................................34

   **IV.** **This Court should order the ABCMR to grant the upgrade, or vacate and remand with instructions to apply liberal consideration and address all arguments.** ..............................38

*CONCLUSION* ............................................................................................................*40*

**INTRODUCTION**

Plaintiff Mark Curtis Stevenson is a Bridgeport native who volunteered to serve in the U.S. Army in 1977 at nineteen years old. The Army deployed him to a foreign base under terrorist threat, where heavy drug use and racist violence were pervasive. When he arrived, the Army handed him a ration card for three gallons of whiskey a month. As a result, Mr. Stevenson developed Substance Use Disorder ("SUD"), a recognized mental health condition. Yet the Army did not diagnose or treat him. Instead, when he went absent without leave because of his SUD, the Army separated him with an Other than Honorable discharge. Mr. Stevenson's discharge status follows him as a black mark on his record, harming his reputation in his community and limiting his employment opportunities and access to veterans benefits.

Years later, having recovered and built a productive and meaningful life, Mr. Stevenson applied to the appropriate military review board, requesting that his discharge status be upgraded to Honorable. Mr. Stevenson relied on recent Department of Defense ("DoD") guidance requiring military review boards to grant "liberal consideration" to upgrade applications based in whole or in part on mental health conditions. The Army Board for Correction of Military Records ("ABCMR") rejected his application. Though the ABCMR agreed that Mr. Stevenson likely had SUD when he served, it concluded without further explanation that SUD is not a "mitigating behavioral health condition under liberal consideration."

The ABCMR cannot ignore DoD's binding guidance, particularly without providing a reasoned explanation for its departure from agency procedures. Nor can the ABCMR disregard the medical consensus that SUD is a mental health condition and single out veterans with SUD for worse treatment than veterans with other mental health conditions.

1

Mr. Stevenson now asks this Court to vacate the ABCMR's decision and instruct the

ABCMR to grant his long overdue discharge upgrade. In the alternative, he asks this Court to

instruct the ABCMR to end its arbitrary, discriminatory policy of excluding veterans with SUD

from liberal consideration and provide a reasoned basis for its decision.

## SUMMARY OF ARGUMENT

Mr. Stevenson seeks judicial review of the ABCMR's December 8, 2021 decision. He

brings this action under the Administrative Procedure Act, the Rehabilitation Act of 1973 and its

implementing guidance, and the Fifth Amendment of the U.S. Constitution.

First, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, the

ABCMR arbitrarily and capriciously denied Mr. Stevenson liberal consideration and a discharge

upgrade. The ABCMR's unexplained conclusion that SUD is not a "mitigating behavioral health

condition under liberal consideration" conflicts with the plain text of DoD's binding guidance,

which provides that "mental health conditions, including PTSD" will be "liberally considered" to

excuse and outweigh misconduct in service. The ABCMR's treatment of SUD undermines

DoD's goals in issuing this guidance, including ensuring fair and consistent treatment of veterans

with these "invisible wounds" in recognition of the unique burdens they face. In further violation

of the APA, the ABCMR failed to respond to multiple key arguments Mr. Stevenson raised,

including that racial trauma contributed to his development of SUD.

Second, in violation of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing

regulations, 32 C.F.R. §§ 56.8(a)(6)(i)-56.8(a)(6)(ii), the ABCMR discriminated against Mr.

Stevenson on the basis of his disability, denying him access to a fair adjudication. The ABCMR

arbitrarily treated SUD less favorably than other comparable disabilities and adopted a policy

effectively creates additional procedural barriers for veterans with disabilities.

Third, in violation of the Fifth Amendment, the ABCMR unlawfully failed to follow the binding Secretarial directives upon which Mr. Stevenson relied. Instead, it implemented a secret, discriminatory policy that stigmatizes veterans with SUD. In so doing, the ABCMR denied Mr. Stevenson's right to due process and equal protection.

Mr. Stevenson's motion for summary judgment should be granted for the reasons that follow.

## FACTS AND PROCEEDINGS

### I.   Mr. Stevenson enlists in the military and is deployed to Germany.

Mark Curtis Stevenson enlisted in the Army at nineteen to serve his country and pursue educational and economic opportunities. Certified Administrative Record at 37, 92, ECF Nos. 16-1, 16-2, 16-3, 16-4, 16-5, 16-6, 16-7, 16-8, 16-9, 16-10, 16-11, 16-12, 16-13, 16-14, 16-15 [hereinafter A.R.]. Mr. Stevenson was raised to highly value service to his community. Mr. Stevenson's mother cultivated a "caring, protective home" and emphasized public service. A.R. 91. He was part of a large, loving family and grew up in Father Panik Village, a low-income housing project in Bridgeport. A.R. 91. At age seven, he started working odd jobs to help make ends meet. A.R. 91. He was a Boy Scout, and later found work mentoring younger children. A.R. 91.

When Mr. Stevenson enlisted, he was planning to serve for at least twenty years, until military retirement. A.R. 92. He excelled in basic training, which reminded him of Boy Scouts. A.R. 92. Mr. Stevenson was quickly selected as a squad leader, and he earned an M-16 Rifle Qualification Badge and an Army Service Ribbon. A.R. 92, 102.

In October of 1977, the Army shipped Mr. Stevenson to Ludwigsburg, West Germany. A.R. 92. Life in Germany was a "culture shock." A.R. 93. Before deploying, Mr. Stevenson

never touched alcohol or used drugs. A.R. 92-93, 99, 188, 191, 194. When he arrived in

Germany, however, the Army handed him a ration card for three gallons of whiskey, twenty

packs of cigars, and four cartons of cigarettes. A.R. 168. All the soldiers, including the officers,

copiously drank alcohol. A.R. 168, 188. Many used drugs. A.R. 188.

Mr. Stevenson, who is Black, also faced profound racism from his fellow soldiers.

A.R. 92. Soldiers strictly segregated by race in social settings, such as the Non-Commissioned

Officers' ("NCO") club. A.R. 168. Violent, race-based altercations broke out "on a frequent

basis." A.R. 93, 168. White soldiers wrote racial slurs in the showers and on Mr. Stevenson's

door. A.R. 93, 168. On one occasion, a soldier physically assaulted Mr. Stevenson and called

him the n-word. A.R. 93, 168. Outside of the base, many locals had never met a Black person

and would stare or make malicious comments. A.R. 93. Locals attempted to touch Mr.

Stevenson's skin to see "if the color would rub off" and watched his fellow Black soldiers to

"see if they grew tails at midnight." A.R. 40, 93.

Like other Black soldiers, Mr. Stevenson felt he could not report these incidents to his

superior officers. A.R. 168. Army documents confirm that superior officers, who were

predominately white, likely would not have taken reports of racism seriously. A.R. 40.

Adding to the stress of this hostile environment, Mr. Stevenson and other

servicemembers lived in "constant fear of violence." A.R. 92. Mr. Stevenson had deployed

during the "German Autumn," a period of heightened violence against U.S. targets by far-left

terrorist groups. A.R. 38, 137-41. An anti-American group called the Baader-Meinhof gang had

recently launched several attacks targeting U.S. military installations, leaving "scores" injured.

A.R. 38, 146. On the base, the environment was tense, with frequent, unpredictable lockdowns.

A.R. 92. Mr. Stevenson's job as a vehicle mechanic exposed him to additional risks, as he often

4

performed courier missions to remote batteries that were vulnerable to terrorist attacks. A.R. 92. On one mission, his vehicle swerved off the road and got trapped in a ravine for hours, "completely exposed." A.R. 92. Mr. Stevenson began to feel a constant "dread and apprehension for his personal safety when he needed to travel outside his home base." A.R. 167.

Suicides were "common" on the base. A.R. 189. Mr. Stevenson personally witnessed one soldier, who lived in his quarters, attempt suicide while high on drugs. A.R. 93. Many soldiers handled the constant anxiety by self-medicating with drugs or alcohol, and Mr. Stevenson recalls numerous overdoses on the base at the time. A.R. 93.

## II.   Mr. Stevenson develops Substance Use Disorder because of his military service.

Six months into his tour, Mr. Stevenson drank for the first time in his life to help ease his fear of terrorist attacks and cope with the anxiety and isolation he felt due to the continual barrage of racist incidents. A.R. 34, 178. The Army normalized heavy drinking by giving soldiers a monthly ration of three gallons of whiskey—more than twelve drinks a day. A.R. 168, 188. Most soldiers took advantage of their ration and drank at the bar on base every day. A.R. 168. Drug use was also commonplace on bases in Germany. A.R. 93, 185, 188. Around the time Mr. Stevenson was serving, a Brigadier General warned Congress that West Germany was a particular "hot spot" for drug use: one congressman estimated that a majority of soldiers used drugs. A.R. 41, 185.

Fellow soldiers introduced Mr. Stevenson to hashish, and eventually heroin, which was readily available on base. A.R. 93, 178. As he became increasingly dependent on alcohol and heroin, Mr. Stevenson did not feel that he could get any help from the military. A.R. 93-94. Soldiers understood that admitting to using drugs was a fast way to get court-martialed and discharged. A.R. 93-94. No one in Mr. Stevenson's chain of command spoke about mental health

treatment, and Mr. Stevenson never heard of any form of addiction counseling. A.R. 94. Though

the Army facilitated and tacitly encouraged substance use, it also made it clear that admitting to

having SUD meant punishment instead of treatment.

III.   **Mr. Stevenson returns to the United States with severe, untreated Substance Use Disorders, which leads to his discharge.**

When Mr. Stevenson returned to the United States, he had developed two types of SUD:

Alcohol Use Disorder and Opioid Use Disorder. A.R. 179-80, 186. His Opioid Use Disorder was

so severe that he had to use heroin immediately upon waking. A.R. 170, 179-80. Mr. Stevenson's

symptoms included a compulsive need to seek out drugs to satisfy his addiction. A.R. 170.

Ultimately, Mr. Stevenson's SUD was so debilitating that he pursued drugs at all costs, causing

him to go absent without leave ("AWOL") three times. A.R. 94, 109.

Mr. Stevenson went AWOL for the first time shortly after returning from Germany.

A.R. 94, 133-34, 169. After taking a leave of absence, Mr. Stevenson spent all his travel money

on drugs and could only raise enough funds to return to the base after seventeen days. A.R. 42,

94. His second AWOL was also a direct result of his SUD. A.R. 94. Mr. Stevenson travelled to

Bridgeport to find drugs, used heroin, and ran out of travel money again. AR. 94, 131-32, 169.

By August of 1980, Mr. Stevenson's SUD had overwhelmed any control he had over his life.

A.R. 94. In his third AWOL, he went on a three-year heroin bender, using heroin around five or

six times a day. A.R. 94, 170. In this state of perpetual intoxication, he lost his sense of time.

A.R. 94. In 1983, Mr. Stevenson surrendered to the military and was administratively separated

with an Other than Honorable ("OTH") discharge. A.R. 10, 94.

IV.    **Mr. Stevenson rebuilds his life after struggling with Substance Use Disorder for more than two decades.**

Six years after enlisting, the enthusiastic young soldier who hoped to spend his career in the Army was gone. After his discharge, Mr. Stevenson struggled with his SUD, continuing to use heroin five to six times a day. A.R. 94, 99, 170, 194, 196. Though he had developed SUD because of his service, Mr. Stevenson's discharge status meant he could not seek care through the U.S. Department of Veterans Affairs ("VA") healthcare system. 38 U.S.C. § 5303(a). Mr. Stevenson's SUD also strained his relationships, and he became homeless. A.R. 94.

Realizing he needed help, he checked himself into a rehabilitation center and began the path to recovery. A.R. 94-95. After detox, Mr. Stevenson spent a year recovering in the Salvation Army's Adult Rehabilitation Center. A.R. 95. Since the day he checked into rehab, Mr. Stevenson has fought to rebuild his life from the wreckage his SUD created. A.R. 96.

Mr. Stevenson's SUD has been in remission for two decades. A.R. 96. He has used this time to repair broken relationships and reconnect with his children. A.R. 96. He found steady employment so that he could support his family and married his current wife Reva, whom he describes as his "soulmate." A.R. 94-95.

Motivated by his faith, Mr. Stevenson is finally able to live the life of service he hoped for when he joined the military. A.R. 95. He leads his local chapter of Narcotics Anonymous. A.R. 96. In 2013, he enrolled full time in Gateway Community College and earned his Associates Degree. A.R. 95. He became a certified substance use counselor and has additional certifications in suicide prevention, nonviolent crisis intervention, and First Aid CPR. A.R. 95. Mr. Stevenson's award-winning work has since helped hundreds of people who struggle with addiction. A.R. 96. He works closely with veterans, because he wants to make his "military service mean something" and ensure no veteran suffers like he did. A.R. 96. One fellow

substance abuse counselor told the ABCMR that he has "rarely seen clients connect with a counselor so deeply." A.R. 197.

Still, Mr. Stevenson's military experience continues to impact his life. Though his SUD is in remission, he struggles with other mental health conditions—depression and anxiety—that he developed in the military. A.R. 206. He has worked tirelessly to repair his life for twenty years, and the shame of his OTH discharge still serves as a reminder of his painful past. A.R. 67. His discharge status also impacts his eligibility for veterans' benefits and services administered by the VA and individual states. *See, e.g.*, 38 U.S.C. § 101(2); 38 C.F.R. § 3.12.

**V.    Mr. Stevenson asks the military for relief from the stigma of his Other than Honorable discharge.**

As the military has gained a better understanding of the severe impacts that service can have on veterans' mental health, it has taken steps to avoid overly harsh and stigmatizing punishments for veterans who had mental health disabilities during service. Congress has authorized the Secretary of the Army, acting through the ABCMR, to make changes to any Army record when doing so is "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The Department of Defense has issued two Secretarial directives relevant to Mr. Stevenson's application that clarify what error and injustice may necessitate discharge upgrades.

In 2017, Acting Under Secretary of Defense for Personnel and Readiness Anthony M. Kurta issued a directive (the "Kurta Memo") instructing the ABCMR to apply "liberal consideration" when a veteran has a mental health condition caused or exacerbated by service. Kurta Memo, ECF No. 19-1. The Kurta Memo requires the ABCMR to give "liberal consideration . . . to veterans petitioning for discharge relief when the application for relief is *based in whole or in part on matters relating to mental health conditions*, including PTSD . . . ." *Id.* ¶ 3 (emphasis added). When liberal consideration applies, "relief may be appropriate . . . for

some significant misconduct sufficiently justified or outweighed by the facts and circumstances."
A.R. 17; Kurta Memo ¶ 26(k). The Kurta Memo also directs the ABCMR to apply "fair and
consistent" standards of review and acknowledges that veterans with mental health conditions
face unique challenges in proving their "invisible wounds" contributed to their discharge. Kurta
Memo, Cover Memo.

In 2018, Under Secretary Defense for Personnel and Readiness Robert L. Wilkie issued
another clarifying memorandum (the "Wilkie Memo") in recognition of continued injustice in
the discharge upgrade petitioning process. Wilkie Memo, ECF No. 19-2. The Wilkie Memo
requires the ABCMR to ensure "fundamental fairness," and consider factors such as the
applicant's candor, the applicant's post-discharge conduct, the length of time since the
misconduct, and whether modern military policies would have led to a more favorable outcome
for the applicant. *Id.* at Cover Memo, ¶¶ 6-7. The Wilkie Memo provides that requests based in
whole or in part on a mental health condition should be considered on injustice grounds as well.
*Id.* ¶ 6(h). It emphasizes the value of rehabilitation rather than achievement and recognizes that
service does not have to be flawless to be considered honorable. *Id.* at Cover Memo.

Relying on the Kurta and Wilkie Memos, Mr. Stevenson asked the ABCMR to upgrade
his discharge status from Other than Honorable to Honorable or Honorable Conditions
("General"). A.R. 8, 28. He also asked the ABCMR to change the narrative reason for his
separation from "Separation by Reason of Serious Misconduct" to "Secretarial Authority."
A.R. 28. In his application, which was prepared by counsel, Mr. Stevenson explained that his
SUD "developed during and because of his service and contributed to the AWOLs underlying his
discharge." A.R. 45. Mr. Stevenson supported his application with an expert evaluation from

psychiatrist Dr. Bhinna Park and psychologist Dr. Madelon Baranoski describing how racial discrimination and the constant risk of terrorist attacks led him to develop SUD. A.R. 163-86.

Mr. Stevenson explicitly argued that SUD was a mental health condition meriting liberal consideration under the Kurta Memo. A.R. 51. His brief pointed to the fact that SUD is defined as a mental health condition in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. A.R. 50-51. He also cited ABCMR precedent indicating that medically recognized mental health conditions could "mitigate [an applicant's] periods of AWOL." A.R. 52. Finally, he demonstrated that he met many criteria for relief under the Wilkie Memo. He argued that "his post-service rehabilitation, character, and community contributions merit relief," and he pointed out that under modern Army substance use policies that provide treatment rather than punishment, "he would have had a more favorable outcome." A.R. 45.

## VI.     The ABCMR rejects Mr. Stevenson's application without addressing the key arguments he raised.

More than a year and a half later, the ABCMR denied Mr. Stevenson's discharge upgrade application. A.R. 1. The Army Review Board's psychologist agreed that Mr. Stevenson had SUD during service, finding that "[t]he evidence suggests that applicant likely met the criteria for Alcohol Use Disorder and Opioid Use Disorder at the time of service." A.R. 13. Yet the ABCMR did not apply liberal consideration to Mr. Stevenson's application. The only explanation it offered was concurrence with the psychologist's assertion that "neither [Alcohol Use Disorder or Opioid Use Disorder] are a mitigating behavioral health consideration under liberal consideration." A.R. 13.

The ABCMR also did not address many of the arguments Mr. Stevenson raised. It did not respond to his argument that SUD is a mental health condition under the Kurta Memo and therefore merits liberal consideration. A.R. 11. Outside the summary of Mr. Stevenson's claims,

the decision did not acknowledge the role that the military played in encouraging SUD by providing soldiers with three gallons of whiskey in lieu of mental health treatment. A.R. 5, 9. The decision also did not address the substance of Mr. Stevenson's claim that the military's racially hostile environment—an environment the Army failed to ameliorate in violation of its own rules and regulations—contributed to Mr. Stevenson's SUD and eventual discharge. A.R. 8. Instead, the Board Discussion section of the denial used a boilerplate statement that the ABCMR "found insufficient evidence of in-service mitigating factors for the misconduct." A.R. 14.

On April 24, 2022, Mr. Stevenson initiated this action in the District of Connecticut. He claims that the ABCMR's denial of his discharge upgrade application (1) was arbitrary and capricious and exceeded the ABCMR's statutory authority in violation of APA Section 706(2), (2) discriminated on the basis of Mr. Stevenson's disability in violation of the Rehabilitation Act, 29 U.S.C. § 794, and (3) violated Mr. Stevenson's Fifth Amendment rights to due process and equal protection. Am. Compl. ¶¶ 143-187.

## ARGUMENT

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a motion for summary judgment on Administrative Procedure Act claims, "the entire case on review is a question of law." *State of Connecticut v. U.S. Dep't of Com.*, No. 3:04-CV-01271-SRU, 2007 WL 2349894, at *1 (D. Conn. Aug. 15, 2007) (citing *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083-84 (D.C. Cir. 2001)). In a motion for summary judgment on constitutional claims, a material fact is one which "might affect the outcome of the suit under the governing law," and a dispute is genuine only if a reasonable factfinder could find for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477

U.S. 242, 248 (1986). To avoid summary judgment for Mr. Stevenson as a matter of law, the

government must provide more than contrary "conclusory allegations, speculation or

conjecture." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). Indeed, "only disputes

over the facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

I.   **The ABCMR's decision to deny Mr. Stevenson's application was arbitrary and capricious, and his discharge upgrade should be granted due to error and injustice.**

Though the ABCMR is required to apply "liberal consideration" to applications "related

to mental health conditions," Kurta Memo ¶ 3, the ABCMR refused to apply liberal

consideration in Mr. Stevenson's case because his mental health condition is SUD. A.R. 13. The

ABCMR's arbitrary exclusion of SUD conflicts with the plain language of the Kurta Memo and

the medical classification of SUD. It also undermines the policy goals that the Kurta Memo

embraces, including ensuring the ABCMR applies consistent rules and giving veterans with

"invisible wounds" a fair opportunity to apply for discharge upgrades. Kurta Memo, Cover

Memo. Despite deviating from DoD's mandates, the ABCMR's decision in Mr. Stevenson's case

provides no explanation for why SUD is excluded from liberal consideration. Therefore, the

ABCMR acted arbitrarily and capriciously in disregarding Mr. Stevenson's mental health

diagnosis and denying his discharge upgrade without providing a rational explanation for its

denial.

The APA provides that courts must "hold unlawful or set aside agency action" if it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C.

§ 706(2)(A) or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory

right," 5 U.S.C. § 706(2)(C). Agency action is arbitrary or capricious if the agency "relied on

factors which Congress has not intended it to consider, entirely failed to consider an important

aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view." *Motor Vehicle Mrfs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Cent. Hudson Gas & Elec. Corp. v. Fed. Energy Regul. Comm'n*, 783 F.3d 92, 108 (2d Cir. 2015) (same); *Butte County v. Hogen*, 613 F.3d 190, 194 (D.D.C. 2010) (same, as to informal adjudications). This standard governs review of ABCMR discharge upgrade determinations. *See Bradley v. Spencer,* No. 3:17-CV-495-RNC, 2019 WL 1567838, at *2 (D. Conn. Apr. 11, 2019). Adjudicatory proceedings "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (citation omitted). The reviewing court cannot "supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (citation omitted).

### A.   *The ABCMR's refusal to extend liberal consideration to Mr. Stevenson's Substance Use Disorder under the Kurta Memo is arbitrary and capricious.*

The ABCMR concluded that Mr. Stevenson "likely met the criteria for Alcohol Use Disorder and Opioid Use Disorder at the time of service." A.R. 13. The Kurta Memo requires the ABCMR to give "liberal consideration" to discharge upgrade applications based "on matters relating to mental health conditions, including PTSD . . . ." Kurta Memo ¶ 3. SUD is diagnosed and treated as a mental health condition in the most respected medical authority on mental health conditions: the Fifth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-5").[1] Yet the ABCMR ignored the medical field's

---

[1] The DSM-5 was the most up-to-date version of the DSM when the ABCMR reviewed Mr. Stevenson's discharge upgrade application. A copy of relevant portions of the DSM-5 is attached as Declaration of Miriam Pierson Exhibit A [hereinafter "DSM-5"]. In March of 2022, the American Psychiatric Association published a text revision of the DSM-5 (the "DSM-5-TR"), which contains revised text, new references, clarifications to diagnostic criteria, and various other updates. There were no changes to the diagnostic guidelines cited in this memorandum. This Court may take judicial notice of the DSM-5 under Fed. R. Evid. 201(b).

consensus about how mental health conditions are defined and arbitrarily concluded, without any explanation, that "neither [Alcohol Use Disorder or Opioid Use Disorder] are a mitigating behavioral health consideration under liberal consideration." A.R. 13. It reached this conclusion despite the fact that the Kurta Memo is intended to give veterans with "invisible wounds" a fair chance at a discharge upgrade. In doing so, the ABCMR ignored the Kurta Memo's plain text and undermined its intent, in violation of the APA.

The ABCMR cannot simply refuse to comply with the requirements of the Kurta Memo, which is a binding Secretarial directive. Congress has required that the Secretaries of military departments comply with procedures approved by the Secretary of Defense. 10 U.S.C. § 1552(a)(3)(A). DoD "order[ed]" BCMRs to "immediately implement" the Kurta Memo when it was issued in 2018. *Morant v. Harker*, No. 3:19-CV-01791, 2021 WL 781795, at *4 (D. Conn. Mar. 1, 2021); *see also Doyon v. United States*, No. 19-1964C, 2021 WL 120923, at *10 (Fed. Cl. Jan. 13, 2021) (explaining that the "Kurta Memoranda *require*[*s*] that military correction boards give liberal consideration . . . .") (emphasis added). That directive has not changed. Moreover, it is arbitrary and capricious for an agency adjudication to deviate from binding guidance—particularly without explanation. *See Zhang v. Slattery*, 840 F. Supp. 292, 294 (S.D.N.Y. 1994) ("It is well settled that an agency must follow its own internal procedures '[w]here the rights of individuals are affected,' whether or not such procedures are formally promulgated." (citation omitted)); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018) (holding that failure to follow procedural guidance in an agency directive violates the APA because "agencies can be held accountable to their own codifications of procedures and policies . . . particularly those that affect individual rights").

1.  ***The plain text of the Kurta Memo directs the ABCMR to provide liberal consideration to applicants with mental health conditions, which includes SUD.***

The Kurta Memo plainly requires that applications for discharge relief receive "[l]iberal consideration . . . when the application for relief is based in whole or in part on matters relating to mental health conditions, *including* PTSD; TBI; sexual assault; or sexual harassment." Kurta Memo ¶ 3 (emphasis added). The use of the term "including," followed by a short list of examples, means that the list is non-exhaustive. *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."); *see also* Antonin Scalia & Bryan A. Garner, *Reading the Law: The Interpretation of Legal Texts* 101 (2012) (copy attached at Declaration of Miriam Pierson [hereinafter "Pierson Decl."] Exhibit B) ("[T]he word include does not ordinarily introduce an exhaustive list . . . . That is the rule both in good English usage and in textualist decision-making.")

Therefore, while the Memo explicitly references PTSD, TBI, sexual assault, and sexual harassment, that list is non-exclusive. The Kurta Memo's plain meaning is that all diagnosed mental health conditions shown to have "existed during military service *will* receive liberal consideration." Kurta Memo ¶ 13 (emphasis added). The only diagnoses excluded are pre-existing conditions not aggravated by service. *Id.* ¶ 15. The Kurta Memo does not exempt any mental health conditions or empower the ABCMR to exempt any mental health conditions from liberal consideration. Instead, the Kurta Memo's language is broad and permissive: it provides that even applications based only "in part" on mental health conditions should receive liberal consideration, as should applications that merely "relate[] to mental health conditions." *Id.* ¶ 3. It emphasizes that "*unless otherwise indicated*, liberal consideration applies to applications based

in whole or in part on matters related to diagnosed conditions, undiagnosed conditions, and misdiagnosed . . . mental health conditions." *Id.* ¶ 25 (emphasis added).

The plain meaning of "mental health condition" for the purposes of liberal consideration must align with the DSM-5. The Kurta Memo provides that, "absent clear evidence to the contrary, a diagnosis rendered by a licensed psychiatrist or psychologist is evidence the veteran had a condition that may excuse or mitigate the discharge," *id.* ¶ 9, and that "a diagnosis made by a licensed psychiatrist or psychologist that the condition existed during military service *will* receive liberal consideration," *id.* ¶ 13 (emphasis added). In the United States, mental health diagnoses are made using the DSM-5, which does not recognize the ABCMR's arbitrary distinction between SUD and other mental health conditions. The DSM-5 dedicates an entire chapter to "Substance-Related and Addictive Disorders," with specific sections examining how to diagnose Alcohol Use Disorder and Opioid Use Disorder. DSM-5 at 490-97, 541-46. Just like for other mental health conditions, the DSM-5 notes that an "essential feature of a substance use disorder is a cluster of cognitive, behavioral and physiological symptoms," and adds that substance use disorders cause "an underlying change in brain circuits." *Id.* at 483. The medical profession's definition of "mental health condition" is the appropriate definition, and that definition includes SUD.

Congress and the courts have recognized that the DSM is the authoritative source on what constitutes a mental health condition in the discharge upgrade context and beyond. *See Moore v. Texas*, 137 S. Ct. 1039, 1045 (2017) (recognizing that current manuals, such as the DSM, "offer 'the best available description of how mental disorders are expressed and can be recognized by trained clinicians'" (citing DSM-5 at xli)). The ABCMR's authorizing statute, 10 U.S.C. § 1552, specifically provides that for certain PTSD and TBI cases receiving liberal consideration, the

16

military boards should "seek advice and counsel in the review from a psychiatrist, psychologist, or social worker with training on mental health issues . . . or other trauma as specified in the current edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association." 10 U.S.C. § 1552(g)(2). The ABCMR and reviewing courts have applied the DSM directly in concluding whether a veteran had a mental health condition that mitigated their misconduct. *See, e.g.,* ABCMR, Dkt. No. AR20170015770 (Feb. 6, 2018), References ¶ 6 (copy attached as Pierson Decl. Exhibit C); *Cowles v. McHugh*, No. 3:13-CV-1741-JCH, 2014 WL 5668543, at *1 (D. Conn. Nov. 4, 2014) (discussing the Secretary's citation of the DSM in litigation about an ABCMR decision).

The Secretary intended the Kurta Memo to ensure "fair and consistent standards of review" and allow applicants for discharge upgrades to "be better informed about how to achieve relief" in cases related to mental health conditions. Kurta Memo, Cover Memo. The Memo was intended to "resolve lingering questions and potential ambiguities" for veterans, not contribute to further confusion. *Id.* The guidance cannot achieve its objectives if the ABCMR is permitted to apply anything other than its plain meaning in adjudicating applications for discharge relief.

2. ***The Kurta Memo was designed to address servicemembers' "invisible wounds," which include SUD.***

Even if the Kurta Memo could be read to exclude some mental health conditions, it cannot be read to exclude SUD. DoD issued the Kurta Memo to address a fundamental injustice: the fact that servicemembers could develop "[i]nvisible wounds" either from or "aggravated by military service," only to be shamed and shut out from benefits because of the symptoms of those injuries. Kurta Memo, Cover Memo, ¶ 15. The Kurta Memo recognizes that the military historically failed to understand mental health disabilities, *id*. ¶ 26(b), often discharging rather than treating veterans for misconduct caused by mental health symptoms, *id.* ¶ 26(j) (observing

17

that liberal consideration applies to mental health conditions that may have caused misconduct in the past "because the separation authority was unaware of their condition or experience at the time of discharge," whereas today there is "heightened screening"). Confirming this change specifically regarding SUD, Dr. Park wrote, "[w]hat was previously thought of as a character defect of willpower has now become commonly-accepted as a neurological disease." A.R. 185.

The Kurta Memo aims to rectify this erroneous treatment of veterans with mental health conditions. *See* Kurta Memo ¶ 26(j) ("[W]hen compared to similarly situated individuals under today's standards, [veterans discharged under prior procedures] may be the victim of injustice because commanders fully informed of such conditions and causal relationships today may opt for a less prejudicial discharge . . . ."); *see also* Wilkie Memo ¶ 6(f) ("Changes in policy, whereby a Service member under the same circumstances today would reasonably be expected to receive a more favorable outcome than the applicant received, may be grounds for relief."). The Memos direct the boards that in cases in which mental health conditions impacted behavior, it may be necessary to favorably exercise their discretion "to correct an error or remove an injustice" in a veteran's discharge papers. 10 U.S.C. § 1552(a)(1).

The crux of the Kurta Memo is this: "Mental Health conditions, including PTSD; TBI; sexual assault; and sexual harassment inherently affect one's behaviors and choices causing veterans to think and behave differently than might otherwise be expected." Kurta Memo ¶ 26(e). The mental impairments and behavioral effects that characterize SUD are exactly the type of invisible wounds the Kurta Memo was designed to address. Thus, the ABCMR's refusal to categorize SUD as a mitigating mental health condition defies the Kurta Memo's charge—both on its face and as revealed by its underlying purpose. The ABCMR's finding that Mr. Stevenson's SUD is not a mental health condition meriting liberal consideration conflicts with

the definition of mental health condition as prescribed by authoritative sources, which are used not only by doctors, Congress, and the courts, but also by the ABCMR itself. The ABCMR did not provide an explanation for its departure from this consensus about how mental health conditions are defined. Therefore, the ABCMR's action is arbitrary and capricious.

###    3.   *It was arbitrary and capricious and an abuse of its discretion for the ABCMR to refuse to find that Mr. Stevenson's SUD mitigated his discharge.*

Had the ABCMR applied the Kurta Memo's liberal ctonsideration standard to Mr. Stevenson's discharge upgrade application as required, the ABCMR would have applied mandatory evidentiary presumptions in Mr. Stevenson's favor and would have granted his discharge upgrade. Therefore, the ABCMR's refusal to upgrade is arbitrary and capricious and an abuse of its discretion. 5 U.S.C. § 706(2)(A); *see also Caddington v. United States*, 178 F. Supp. 604, 607 (Ct. Cl. 1959) ("[T]he Secretary and his boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief."). Liberal consideration as set out in the Kurta Memo is a generous standard of review as well as a set of evidentiary standards and inquiries. It typically proceeds via a board's evaluation of four factors: whether (1) the veteran "ha[d] a condition . . . that may . . . mitigate the discharge;" (2) "that condition exist[ed] . . . during military service;" (3) "that condition . . . actually . . . mitigate[s] the discharge;" and (4) "that condition . . . outweigh[s] the discharge['s]" severity. Kurta Memo ¶ 2. The ABCMR abused its discretion in failing to apply the mandatory evidentiary presumptions that underlie the four Kurta factors in Mr. Stevenson's discharge upgrade application.

First, the Boards, including the ABCMR, examine whether the veteran has "a condition or experience that may excuse or mitigate the discharge." Kurta Memo ¶ 2(a). The Kurta Memo sets a rebuttable presumption that "a diagnosis rendered by a licensed psychiatrist or

psychologist is evidence the veteran had a condition that may excuse or mitigate the discharge."
*Id*. ¶ 9. Mr. Stevenson met that standard: Dr. Park, a licensed psychiatrist, diagnosed Mr.
Stevenson with Alcohol Use Disorder and Opioid Use Disorder, currently in remission.
A.R. 179. Mr. Stevenson also supplied the ABCMR with a full psychiatric report and detailed
medical records to document and explain his diagnosis with SUD. A.R. 163-186, 204-217. There
is no "clear evidence to the contrary" in the record to rebut the veracity of that diagnosis; the
ABCMR was therefore required to answer the first question in the affirmative. Kurta Memo ¶ 9.

Second, the Boards consider whether the "condition/experience ocurr[ed] during military
service." *Id.* ¶ 2(b). The Kurta Memo specifies that a "diagnosis made by a licensed psychiatrist
or psychologist that the condition existed during military service *will* receive liberal
consideration," *id*. ¶ 13 (emphasis added), unless the condition pre-existed and was not
aggravated by service, *id.* ¶ 15. In her psychiatric report provided to the ABCMR, Dr. Park
wrote, "It is my opinion . . . that [Mr. Stevenson's] Alcohol and Opioid Use Disorder can be
directly linked to his time in the military." A.R. 186. Dr. Park concluded that, "beginning with
his time in the service and continuing after his return to the United States," Mr. Stevenson
struggled with SUD. A.R. 179. Corroborating Dr. Park's diagnosis, the ABCMR's psychologist
agreed that Mr. Stevenson "likely met the criteria for Alcohol Use Disorder and Opioid Use
Disorder at the time of service." A.R. 13. Mr. Stevenson gave additional supporting evidence for
this diagnosis through multiple affidavits explaining that his SUD was caused by the trauma-
inducing environment on the base—namely, the targeted racial discrimination he faced and the
hostile military activity from a nearby terrorist group. A.R. 91-100, 187-97. It is undisputed that
Mr. Stevenson's SUD began during his service and did not pre-exist it.

Third, the Boards evaluate the "condition or experience actually excuse[s] or mitigate[s] the discharge." Kurta Memo ¶ 2(c). The Kurta Memo mandates that "[c]onditions . . . that may reasonably have existed at the time of discharge *will* be liberally considered as excusing or mitigating the discharge." *Id.* ¶ 16 (emphasis added). Dr. Park affirmed that Mr. Stevenson's in-service SUD existed at the time of his discharge and his substance-seeking symptoms caused the AWOLs that resulted in his Other than Honorable discharge. A.R. 186. The ABCMR found that Mr. Stevenson's SUD likely existed at the time of his discharge, yet refused to consider his condition as an excusing or mitigating factors. Instead, it adopted the advising official's conclusion that "there is no evidence that applicant had a mitigating behavioral health condition at the time of service." A.R. 13. The ABCMR acted arbitrarily and capriciously and abused its discretion in offering no explanation or clarity for why Mr. Stevenson's condition should be treated any differently than other diagnosed conditions, thereby exposing its inadequate reasoning. *See Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (holding that because the agency "did not respond to two of [the plaintiff's] arguments, which do not appear frivolous on their face and could affect the Board's ultimate disposition, we conclude that the Board's decision was arbitrary").

Fourth, the Boards determine whether the "condition or experience outweigh[s] the discharge," Kurta Memo ¶ 2(d), given "the severity of the misconduct," *id.* ¶ 18. An AWOL is severe misconduct; however, the ABCMR has previously recognized that mental health conditions can outweigh AWOLs in a liberal consideration analysis. *See* ABCMR, Dkt. No. AR20160000200 (Aug. 17, 2017), References ¶ 12(f) (copy attached as Pierson Decl. Exhibit D) (recognizing a mental health condition that can cause "impulsive, irrational, [and] paranoid thinking" as a mitigating factor for AWOL); ABCMR, Dkt. No. AR20190013166 (Feb. 10,

2020), Board Discussion ¶ 1 (copy attached as Pierson Decl. Exhibit E) (establishing personality

disorders as a mitigating factor for AWOL). Here, Mr. Stevenson also provided evidence of past

ABCMR decisions in which mental health conditions were found to cause and, therefore,

mitigate AWOLs. A.R. 218-58. Mr. Stevenson's misconduct was not "premeditated," Kurta

Memo ¶ 19, and did not involve violence or harm to others. He recognized that his periods of

AWOL were a mistake for which he sincerely asks the Army for forgiveness. A.R. 97. Despite

all this evidence, the ABCMR unlawfully refused to engage in an analysis of whether Mr.

Stevenson's mental health conditions outweighed the misconduct that led to his discharge. Had

the ABCMR done so, it would have found that the mitigating circumstances of his SUD

symptoms outweighed his AWOLs and granted his discharge upgrade under the Kurta Memo's

liberal consideration standard.

**B. The ABCMR's refusal to address Mr. Stevenson's non-frivolous arguments, including about the racial discrimination he experienced in service, was arbitrary and capricious and violated statutory mandates.**

In his ABCMR application, Mr. Stevenson explained that his SUD was caused by in-

service racial discrimination. Those mitigating circumstances and his post-service rehabilitation

merit consideration under the 10 USC § 1552(a)(1) standard and the Kurta and Wilkie Memos.

Even if Mr. Stevenson's SUD does not merit liberal consideration, the ABCMR was obligated to

respond to these arguments and its failure to do so was arbitrary and capricious.

The ABCMR has an obligation to respond to non-frivolous arguments made in a

discharge upgrade application. *See Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005)

(holding that a military review board acts arbitrarily in failing "to respond to arguments raised by

a plaintiff, which do not appear frivolous on their face and could affect the Board's ultimate

disposition"); *Frizelle*, 111 F.3d at 177. While the ABCMR's decision need not be analytically

precise, it is required to "articulate a rational connection between the facts found and the choice made." *Dibble v. Fenimore*, 545 F.3d 208, 219 (2d Cir. 2008) (applying the standard to the Air Force BCMR) (internal citation omitted).

In its decision on Mr. Stevenson's application, the ABCMR failed to provide sufficient reasons explaining why the denial was justified. A.R. 13-14. Mr. Stevenson provided evidence that his SUD developed and manifested in service, demonstrated the causal connection of that SUD to his AWOLs, and argued that SUD mitigates his discharge. Yet, the ABCMR concluded that "[e]vidence of record shows, at the time of separation, documentation supports the narrative reason for separation properly identified on the DD Form 214." A.R. 14. By providing only conclusory statements without adequate explanation of those conclusions, the ABCMR abused its discretion. *See Ke Zhen Zhao v. U.S. Dep't of Justice,* 265 F.3d 83, 93 (2d Cir. 2001) ("An abuse of discretion may be found [when the agency's] decision . . . contains only summary or conclusory statements.").

Moreover, the ABCMR issued a standardized, unspecific denial of Mr. Stevenson's evidence and arguments. Merely acknowledging argument is not enough. *See Rudo v. Geren*, 818 F. Supp. 2d 17, 26-27 (D.D.C. 2011) ("Although the ABCMR vaguely acknowledged the plaintiff's due process argument . . . under the heading 'Counsel's Request, Statement, and Evidence' but providing no further analysis . . . it never addressed this argument in its discussion or explained why it chose not to address it . . . . [The ABCMR] was nevertheless required to provide sufficient reasoning which would allow this court to conduct a proper review."). The ABCMR arbitrarily refused to answer Mr. Stevenson's claims of the Army's contribution to his SUD by failing to mitigate the racial tension, terrorist threats, and mental health epidemic on base. Rather, the ABCMR concluded generally that there was "insufficient evidence of in-service

mitigating factors" and "insufficient evidence of an error or injustice" to merit correction. A.R. 14. The ABCMR relied on the ambiguous phrase "insufficient evidence" to provide boilerplate reasoning for its denial of relief on both error and clemency grounds. However, under the arbitrary and capricious standard, this reasoning is insufficient. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence."). The ABCMR should have given all Mr. Stevenson's evidence and arguments their due liberal consideration and provided rational, relevant answers.

Specifically, Mr. Stevenson documented multiple cases of in-service racism, including "racial epithets written on his door or in the showers" and locals touching his skin to see "if the color would rub off." A.R. 39-40, 93, 168. Dr. Park affirmed that "the traumatic experiences of racist encounters and the constant threat of terrorist activity" compelled Mr. Stevenson to "tur[n] to readily-available means to cope"—namely, alcohol and heroin. A.R. 185. In her medical opinion, Dr. Baranoski similarly found that his addiction "occurred because of . . . circumstances related to his military experience [including] the drinking culture encouraged of the military supported by inexpensive, available, and accepted use of alcohol, the availability of drugs, and racism that eroded the sense of community . . . ." A.R. 178. Yet while the ABCMR's denial discusses the racial discrimination Mr. Stevenson experienced in its factual summary, it makes no mention of this discrimination and its impact on Mr. Stevenson and his application in the "Board Discussion" section. A.R. 13-14. This is despite that the Army was and is under regulatory obligation to rid its environment of discrimination under AR 600-21. The Army's failure to address racial discrimination while Mr. Stevenson was in service was both an error and injustice that the ABCMR was not free to ignore.

Additionally, the ABCMR failed to address further arguments that Mr. Stevenson made under the Wilkie Memo, abusing its discretion. Indeed, "when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975). The Wilkie Memo requires that the ABCMR implement its statutory mandate to amend records to "remove an injustice," 10 U.S.C. § 1552(a)(1). It directs the ABCMR to "grant relief" where it is necessary to "ensure fundamental fairness," Wilkie Memo ¶ 2, and to consider an applicant's "character and rehabilitation" foremost, *id.* ¶ 6(b).

The ABCMR did not consider the fundamental fairness of maintaining Mr. Stevenson's OTH discharge in light of the fact that his time in Germany was rife with racial tension, hostile anti-military fervor, and a base-wide addiction epidemic that caused his SUD. A.R. 37-41. The decision stated it reviewed Mr. Stevenson's "post-service achievements and letter of support," but it did not note whether it considered Mr. Stevenson's post-service *rehabilitation*: his path to recovery, maintenance of his sobriety, contrition, commitment to his family, and decades of community service showing strength of character. A.R. 13-14. The ABCMR was required to provide adequate rationale for excluding these factors from consideration. *See Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 853 (D.C. Cir. 1993) (providing an ABCMR decision must provide the ability to "discern whether the [ABCMR] considered and was unpersuaded by [certain] factors or whether the [ABCMR] simply excluded them from its decision making process"). It did not do so.

## II.    The ABCMR violated the Rehabilitation Act.

The ABCMR denied Mr. Stevenson equal access to the discharge upgrade adjudication process due to his SUD. This denial violates Section 504 of the Rehabilitation Act, which

provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any Executive agency . . . ." 29 U.S.C. § 794(a). The ABCMR is part of an Executive agency. 10 U.S.C. § 1552(a)(1); 32 C.F.R. § 581.3(c)(1) (establishing the ABCMR "within the Office of the Secretary of the Army"). Mr. Stevenson is an individual with a disability under Section 504. *See* 29 U.S.C. § 705(20)(C)(ii)(I) (providing that a person who has "successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs" is an individual with a disability); *D'Amico v. City of New York*, 132 F.3d 145, 150 (2d Cir. 1998) ("[S]ubstance abuse is a recognized disability for purposes of the Rehabilitation Act.").

Mr. Stevenson can enforce his rights under the Rehabilitation Act through the APA. *Moya v. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020) ("[T]he APA provides an express cause of action for plaintiffs who wish to sue an executive agency for violating the Rehabilitation Act."). The ABCMR's policy of excluding veterans with SUD from liberal consideration violates the Rehabilitation Act, as well as DoD's regulations implementing Section 504, by denying people with SUD equal access to the ABCMR's adjudicative procedures "solely by reason of [their] disability." 29 U.S.C. § 794(a); *see also* 32 C.F.R. §§ 56.8(a)(6)(i)-56.8(a)(6)(ii) (prohibiting "criteria or methods of administration" that discriminate against persons "on the basis of handicap" or "substantially impair accomplishment of the objectives" of the program for handicapped persons). Therefore, the ABCMR's action was arbitrary and capricious, 5 U.S.C. § 706(2)(A), and violated Mr. Stevenson's statutory rights, 5 U.S.C. § 706(C).

### A. The ABCMR unlawfully discriminates against veterans with SUD.

The ABCMR discriminated against Mr. Stevenson because of his mental health conditions, Alcohol Use Disorder and Opioid Use Disorder, by denying him the liberal consideration afforded to veterans with other mental health conditions. Denying some individuals with disabilities the rights afforded to other individuals with disabilities "qualifies as discrimination 'by reason of . . . disability.'" *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999). In *Olmstead*, the Supreme Court emphatically rejected the dissent's argument that "a plaintiff cannot prove 'discrimination' [under the ADA] by demonstrating that one member of a particular protected group has been favored over another member of that same group." *Id.* at 598 n.10 (quoting *id.* at 618 (Thomas, J., dissenting));; *see Wright v. New York State Dep't of Corrections*, 831 F.3d 64, 72 (2d Cir. 2016) ("[T]he standards under both [Section 794(a) of the Rehabilitation Act and Title II of the ADA] are generally the same . . . ."). The Court called the dissent's argument "incorrect as a matter of precedent and logic." *Olmstead*, 527 U.S. at 598 n.10; *see also Boots v. Nw. Mut. Life Ins. Co.*, 77 F. Supp. 2d 211, 218 (D.N.H. 1999) (observing that, in *Olmstead*, the Supreme Court "rejected the argument that disparate treatment of different members of a protected class is not discrimination" and overruled dicta in *Traynor v. Turnage*, 485 U.S. 535, 549 (1988) that suggested the opposite).

Although courts have sometimes upheld distinctions between individuals with different disabilities, they are cautious as to distinctions based on generalizations that lack substantial support. In *Traynor v. Turnage*, the Court held that the Rehabilitation Act did not implicitly repeal a veterans disability compensation statute that excluded disabilities sustained through "willful misconduct," which the court read to include alcoholism. 485 U.S. 535, 545 (1988). However, the *Traynor* Court recognized that "[i]t would arguably be inconsistent with

27

§ 504 . . . to distinguish between  of disabled veterans according to generalized determinations that lack any substantial basis." *Id.* at 550. The Court also acknowledged that, to the extent primary alcoholism was "not always 'willful,' . . . some veterans denied benefits may well be excluded solely on the basis of their disability." *Id.*

Legislative and medical developments since *Traynor* demonstrate that generalized discrimination against individuals with SUD lacks any substantial basis. Congress immediately overturned the specific result in *Traynor* by "amend[ing] 38 U.S.C. § 105(c) to say that . . . 'the disabling effects of chronic alcoholism shall not be considered to be the result of willful misconduct.'" *Martin v. McDonald*, 761 F.3d 1366, 1371 n.3 (Fed. Cir. 2014) (finding also that "Congress has taken action indicating that alcohol abuse and willful misconduct . . . are not coextensive"); *see also* S. Rep. No. 100-439, at 96 (1988) (copy attached as Pierson Decl. Exhibit F) ("The effect of the Committee bill would be, in part, to overturn the result in the case of *Traynor v. Turnage* . . . ."). Medically, there has been "a large paradigm shift in SUD [classification] . . . in less than half a century's time." Sean M. Robinson & Bryon Adinoff, *The Classification of Substance Use Disorders: Historical, Contextual, and Conceptual Considerations*, 6 Behav. Sci. 1, 1 (2016) (copy attached as Pierson Decl. Exhibit G). SUD is no longer conceptualized as a "manifestation[] of underlying primary" conditions, but is instead considered a "*primary mental health disorder*[]" itself. *Id.*

DoD implemented the Kurta Memo in part to help applicants with mental health conditions overcome "limited records" documenting their invisible injuries. Kurta Memo, Cover Memo. Excluding SUD from liberal consideration holds veterans with SUD to a higher evidentiary standard and standard of review than veterans with other mental health conditions, even though SUD is an invisible wound that presents many of the same evidentiary challenges as

other mental health conditions. Kurta Memo ¶ 26(f) ("Reviews involving diagnosed, undiagnosed, or misdiagnosed . . . mental health conditions . . . should not condition relief on the existence of evidence that would be unreasonable or unlikely under the specific circumstances of the case."). The Kurta Memo explains that substance abuse may be evidence of a mental health condition, and that even where misconduct is found to be premeditated, "substance-seeking behavior and efforts to self-medicate symptoms of a mental health condition may warrant consideration." Kurta Memo ¶ 19. Substance use and substance-seeking behavior are symptoms of many mental health conditions, *including* SUD. DSM-5 at 490-91. The ABCMR baldly discriminates against applicants with SUD by applying liberal consideration only when substance use and substance-seeking behavior are symptoms of other mental health conditions, but not when they are symptoms of SUD itself. *See* Robinson & Adinoff, *supra*, at 1 (copy attached as Pierson Decl. Exhibit G) (observing that "the fact that the DSM identifies SUDs *as primary mental health disorders* [is] taken for granted today").

The ABCMR has not shied away from recognizing the devastating impacts of other mental health conditions, granting liberal consideration—and discharge upgrades—to individuals who suffer from a variety of conditions. The ABCMR has recognized schizophrenia as a mitigating factor for AWOLs, as it can lead to "impulsive, irrational, [and] paranoid thinking." ABCMR, Dkt. No. AR20160000200 (Aug. 17, 2017), References ¶ 12(f) (copy attached as Pierson Decl. Exhibit D). Further, the ABCMR has recognized that personality disorders can mitigate AWOLs. ABCMR, Dkt. No. AR20190013166 (Feb. 10, 2020), Board Discussion ¶ 1 (copy attached as Pierson Decl. Exhibit E). SUD impairs and controls one's life in the same way as these conditions, for that is the very reason they are all deemed mental disorders under the DSM. Under the clear intent of the Kurta Memo, SUD is just as much an "invisible wound"

capable of causing misconduct as PTSD, schizophrenia, or a personality disorder. The distinction between SUD and other mental health conditions is foreign to the DSM.

Treating SUD differently from other mental health conditions acquired as a direct result of trauma from military service is especially arbitrary. The Army subjected Mr. Stevenson to extraordinary levels of stress due to on-base racial violence and off-base threats of terrorism. A.R. 37-40, 92-93. The Army then directly enabled and encouraged Mr. Stevenson to use substances to cope with that stress by giving out ration cards that bought access to an average of about twelve drinks per day, A.R. 41, 168, 188, more than twice the currently accepted threshold for "heavy alcohol use." *Understanding Alcohol Use Disorder*, Nat'l Inst. on Alcohol Abuse and Alcoholism (April 2021) (copy attached as Pierson Decl. Exhibit H). The Army's evolving policies surrounding substance use detection and rehabilitation reveal the new institutional understanding that the Army played a direct role in driving some veterans to substance use, just like it played a direct role in driving some veterans into conditions such as PTSD. *See* A.R. 61-62. Since there is no substantial basis for distinguishing Mr. Stevenson's SUD from other mental health conditions acquired by his fellow soldiers, the ABCMR's differential treatment constitutes discrimination on the basis of Mr. Stevenson's disability in violation of the Rehabilitation Act.

**B.   The ABCMR unlawfully denies veterans with SUD adequate access to the discharge upgrade process.**

One purpose of the Kurta and Wilkie memos was to make discharge upgrade reviews more "fair and consistent" for those with "[i]nvisible wounds." Kurta Memo at 1. However, by excluding veterans with SUD from liberal consideration, the ABCMR continues to disadvantage veterans like Mr. Stevenson and thereby deny them the opportunity for adequate access to the discharge upgrade process.

Indeed, under the ABCMR's approach, veterans with SUD not only remain subject to the same stigma that historically accompanied so many mental health conditions, but are under *additional* stigma because they are singled out from other conditions for worse treatment. The ABCMR's policy of excluding SUD reflects and reinforces irrational animus towards people with SUD based on a scientifically refuted belief that people with SUD are responsible for their substance use. *See* Nora D. Volkow, *Stigma and the Toll of Addiction*, 328 New Eng. J. Med. 1289, 1289 (April 2, 2020) (copy attached as Pierson Decl. Exhibit I) (observing that "[t]acit beliefs or assumptions about personal responsibility — and the false belief that willpower should be sufficient to stop drug use — are never entirely absent from most people's thoughts when they interact with someone with a drug problem"). While the Army has implemented a "cultural shift from punishment to restoration," veterans with SUD are denied the benefits of these evolving medical and institutional views. A.R. 62; *see also* Wilkie Memo, Cover Memo, ¶ 6(g) (emphasizing "second chances" and "restoration of rights" and noting that treatment of marijuana, for example, has changed).

Moreover, the ABCMR undermines the clarifying purpose of the Kurta Memo for applicants with SUD by diverging from the memo's public guidance. The Kurta Memo was designed to help make sure that "veterans will be better informed about how to achieve relief in [cases with mental health conditions]." Kurta Memo, Cover Memo. Instead, the ABCMR's secret policy of excluding SUD ensures that Mr. Stevenson and other veterans like him will waste valuable time and effort tailoring their application for a discharge upgrade to a liberal consideration standard they never had a chance to receive. Ultimately, the ABCMR has damaged Mr. Stevenson's ability to fully and effectively participate in the discharge upgrade review

process "solely by reason of . . . his disability," thereby violating his rights under the

Rehabilitation Act. 29 U.S.C. § 794(a).

### III.    The ABCMR violated Mr. Stevenson's Fifth Amendment rights to equal protection and due process.

While DoD promises that discharge upgrade applicants with mental health conditions

will receive liberal consideration, the ABCMR has covertly adopted an arbitrary policy that

excludes veterans with SUD. As long as this policy stands, veterans like Mr. Stevenson will

inevitably have their requests for liberal consideration denied. The ABCMR violated Mr.

Stevenson's Fifth Amendment equal protection right by adopting a discriminatory policy that

lacks any rational basis. The ABCMR then denied Mr. Stevenson's discharge upgrade

application without due process by ignoring binding procedural guidance and adding a secret

rule that SUD is not a mitigating mental health conditions.

### A.  The ABCMR discriminates against veterans with SUD without a rational basis.

Mr. Stevenson brings his equal protection claim under the Fifth Amendment, "the

'approach to [which] . . . has always been precisely the same as to equal protection claims under

the Fourteenth Amendment.'" *Collier v. Barnhart*, 473 F.3d 444, 448 (2d Cir. 2007) (quoting

*Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)). Therefore, a federal policy violates the

Fifth Amendment's equal protection guarantee if the policy lacks "a rational relationship to a

legitimate governmental objective." *Thomas v. Sullivan*, 922 F.2d 132, 136 (2d Cir. 1990).

There is no rational reason why the ABCMR should treat SUD categorically differently

from other mental health conditions in applying liberal consideration under the Kurta Memo. The

DoD adopted the Kurta Memo because it recognizes that (1) mental health conditions can

emerge or worsen as a result of experiences in military service; (2) the symptoms of those mental

health conditions can cause misconduct; and (3) the military historically punished rather than

32

treated servicemembers whose mental health conditions caused misconduct. *See supra* Sec. I.A.2 (citing Kurta Memo ¶¶ 5-6, 16, 18-19, 26d-26g). Mr. Stevenson's case demonstrates that SUD can develop as a result of military service and can also be just as severe and disabling as other mental health conditions. SUD alters brain chemistry, DSM-5 at 483, and it frequently drives inappropriate and illegal behavior, *id.* at 492-93 (Alcohol Use Disorder); *id.* at 541-42 (Opioid Use Disorder); *cf. id at* 275-76 (describing similar symptoms for PTSD); *id.* at 626 (same for TBI). The Kurta Memo acknowledges the medically accepted fact that substance use and substance-seeking behavior can be symptoms of many mental health conditions. Kurta Memo ¶ 19. It is irrational to ignore the fact that they are also symptoms of SUD itself. DSM-5 at 491 (Alcohol Use Disorder); *id.* at 541 (Opioid Use Disorder). Rational basis review is not so "toothless" as to permit such bias against people with SUDs to go unchecked. *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013) (citations omitted). Indeed, "a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate government interest." *Id.* (citations omitted).

People with SUD are not exempted from the equal protection clause's coverage. *See Doe v. Goord*, No. 04-CV-00570, 2004 WL 2829876, at *13-14 (S.D.N.Y. Dec. 10, 2004) (allowing an equal protection claim by a "mentally disabled substance dependent prisoner" to proceed on allegations that he was provided "fewer and less . . . comprehensive mental health services" than other "mentally ill" prisoners without substance dependence). By excluding veterans with SUD from liberal consideration, the ABCMR singles out those veterans for worse treatment without identifying any legitimate government interest in doing so.

**B. The ABCMR deprived Mr. Stevenson of significant liberty and property interests without due process of law.**

While the ABCMR secretly adopted a policy that discriminates against veterans with SUD, applicants like Mr. Stevenson continued to rely on the Kurta and Wilkie Memos, which require "liberal consideration" for applications from veterans with "mental health conditions." Kurta Memo ¶ 3. Where "(1) state action (2) deprive[s] [the plaintiff] of liberty or property (3) without due process of law," that action violates the Fifth Amendment. *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015). The Due Process Clause does not allow agencies to ignore their own procedural guidance and add secret, arbitrary hurdles for applicants to overcome. *See Montilla v. Immig. & Naturalization Servs.*, 926 F.2d 162, 167 (2d Cir. 1991) (explaining that due process requires agencies to follow their own guidance).

**1. Mr. Stevenson has cognizable liberty and property interests in a discharge upgrade.**

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 59 (1999) (citation omitted). Here, the ABCMR's denial of Mr. Stevenson's discharge upgrade claim arbitrarily deprives him of his liberty interest in his reputation and his property interest in an Honorable discharge status.

First, Mr. Stevenson has a cognizable liberty interest in escaping the stigma of his Other than Honorable discharge status. The Second Circuit has held that "[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004). Individuals have a liberty interest in preventing "stigmatizing . . . statements that call into question [their] 'good name, reputation, honor, or integrity.'" *Id.* (citation omitted).

Mr. Stevenson's Other than Honorable discharge status is a black mark on his record that impacts his ability to find employment and undermines his reputation in his community. *Kauffman v. Sec'y of the Air Force*, 415 F.2d 991, 995 (D.C. Cir. 1969) ("[T]he stigma experienced by the recipient of a discharge under other than honorable conditions is very akin to the concept of infamy." (internal quotations omitted)); *see also Weaver v. United States*, 46 Fed. Cl. 69, 77-78 (2000) (holding that plaintiff had liberty interest in avoiding the stigma associated with an Other than Honorable discharge). The ABCMR compounded the stigma of Mr. Stevenson's Other than Honorable discharge by singling out veterans with SUD like Mr. Stevenson for exclusion from the Kurta Memo's liberal consideration procedures. *See Cooper v. Caldera,* 96 F. Supp. 2d 1160, 1165 (D. Kan. 2000) (holding that the ABCMR's actions implicated a liberty interest where "procedural errors by the ABCMR stigmatized [the plaintiff] as a cocaine user").

Moreover, Mr. Stevenson's loss of reputation is "coupled with a deprivation of a more tangible interest." *Patterson*, 370 F.3d at 330. Mr. Stevenson's discharge status does not simply harm his reputation, it is a "state-imposed . . . legal status." *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 4 (2d Cir. 2013) (holding that a "state-imposed alteration [of an individual's] legal status" creates a tangible interest). Indeed, Mr. Stevenson is not legally considered a "veteran" by the VA because of his discharge status. 38 U.S.C. § 101(2). Veterans with Other than Honorable discharges for lengthy AWOLs are also barred from receiving many VA benefits. *See, e.g.*, 38 C.F.R. § 3.12. These tangible legal and financial impacts, in combination with the ABCMR's stigmatizing statements about Mr. Stevenson, are sufficient to create a liberty interest.

Further, Mr. Stevenson has a property interest in an Honorable discharge status. An individual has a cognizable property interest where "state or federal law confers an entitlement to benefits." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005). "[A]pplicants for benefits, no less than current benefits recipients, may possess a property interest," as long as the benefits regime includes "fixed eligibility criteria" that "meaningfully channel official discretion." *Id.* at 114-15. The eligibility criteria merely need to "channel official discretion," not eliminate it: "a standard that leaves room for judgment may still create a property interest." *Alexander v. Azar*, No. 3:11-CV-01703-MPS, 2020 WL 1430089, at *29 (D. Conn. Mar. 24, 2020), *aff'd sub nom. Barrows v. Becerra*, 24 F.4th 116 (2d Cir. 2022). In this case, "the federal discharge review process plainly obliges defendants to utilize specified criteria and to grant a discharge where these criteria indicate that it would be 'equitable' to do so." *Strang v. Marsh*, 602 F. Supp. 1565, 1581-82 (D.R.I. 1985). Therefore, Mr. Stevenson had a property interest in his discharge status and the benefits he would get from an Honorable discharge status.

### 2. *The ABCMR violated Mr. Stevenson's right to due process by following an arbitrary, secret policy instead of its own binding guidance.*

Since Mr. Stevenson has a property and liberty interest in the outcome of his discharge upgrade application, the ABCMR was obligated to afford him adequate process when adjudicating his claim. Instead, the ABCMR secretly implemented a discriminatory procedural rule that conflicts with the plain language of the Kurta Memo.

The ABCMR admits that "the due process protections of the Fifth Amendment require that federal administrative agencies follow their own regulations and sub-regulatory guidance in conducting their adjudications." *See* Am. Compl. ¶ 156; Answer ¶ 156 (admitting this legal argument). In *Accardi v. Shaughnessy*, the Supreme Court established that "an agency's violation of its own procedures may constitute a denial of due process." *Sneaker Circus, Inc. v. Carter*,

566 F.2d 396, 402 (2d Cir. 1977) (citing *Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). Since "[t]he *Accardi* doctrine is premised on fundamental notions of fair play underlying the concept of due process . . . . [i]ts ambit is not limited to rules attaining the status of formal regulations." *Montilla*, 926 F.2d at 167. "This is so even where the internal procedures are possibly more rigorous than would otherwise be required" by the Due Process Clause, *id.* (citations omitted), and where "discretionary decisions are involved," *Smith v. Resor*, 406 F.2d 141, 145 (2d Cir. 1969). In Mr. Stevenson's case, the ABCMR violated binding procedural guidance that required it to apply liberal consideration to applications from veterans with SUD. Kurta Memo ¶ 3.

This due process violation is especially egregious because Mr. Stevenson relied on the plain text and purpose of the Kurta Memo when preparing his application for a discharge upgrade. *See United States v. Caceres*, 440 U.S. 741, 752-53 (1979) (holding that the Due Process Clause is implicated where a plaintiff "reasonably relied on agency regulations promulgated for his guidance or benefit"). With no notice that the ABCMR had secretly decided that SUD is not a "mitigating behavioral health consideration under liberal consideration," A.R. 13, Mr. Stevenson developed evidence and arguments to show that he met the requirements for liberal consideration under the Kurta Memo, A.R. 46-58. This condition that the ABCMR secretly added to liberal consideration violated Mr. Stevenson's Fifth Amendment rights. *Cf. Sherman v. Burwell*, No. 3:15-CV-01468-JAM, 2016 WL 4197575, at *5 (D. Conn. Aug. 8, 2016) (holding that evidence of a "secret practice that effectively 'mandates a defined administrative outcome'" violates a plaintiff's due process rights (citation omitted)); *Jimmo v. Sebelius*, No. 5:11-CV-00017, 2011 WL 5104355, at *1 (D. Vt. Oct. 25, 2011) (denying motion to dismiss Fifth Amendment claim where agency "impose[d] a covert rule of thumb that operates as an additional and illegal condition of coverage" (citation omitted)).

IV.     **This Court should order the ABCMR to grant the upgrade, or vacate and remand with instructions to apply liberal consideration and address all arguments.**

Mark Curtis Stevenson respectfully requests that the Court grant the motion for summary judgment and vacate the ABCMR's decision denying his discharge upgrade application. Section 706(2) of the APA empowers this Court to "hold unlawful and set aside agency action" if it is (A) "arbitrary [and] capricious," (B) "contrary to a constitutional right," or (C) "in excess of statutory authority . . .  or short a of statutory right." 5 U.S.C. § 706(2). Further, this Court can "compel agency action unlawfully denied." 5 U.S.C. § 706(1). To rectify the significant errors that led to the denial of Mr. Stevenson's discharge upgrade application, Mr. Stevenson asks this Court to order the ABCMR to (1) upgrade Mr. Stevenson's discharge status to Honorable or General (under Honorable conditions) and his Narrative Reason for Separation to "Secretarial Authority" based on the evidence of record or, in the alternative (2) vacate and remand the ABCMR's decision for reconsideration, ordering the agency to apply the correct legal and evidentiary standards of liberal consideration to Mr. Stevenson's discharge upgrade application and respond to all his non-frivolous arguments.

Pursuant to its power to "compel agency action unlawfully denied," this Court can order the ABCMR to grant Mr. Stevenson's application for a discharge upgrade if the "record provides persuasive proof [of his claims] and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Simko v. Bd. of Immigr. Appeals*, 156 F. Supp. 3d 300, 315-16 (D. Conn. 2015) (directing the Board of Immigration Appeals to grant the plaintiff's Petition for an Alien Relative after arbitrary denial). If the ABCMR applied the correct standard under the Kurta and Wilkie Memos to the record in Mr. Stevenson's application, it would be compelled to grant Mr. Stevenson a discharge upgrade. *Cf. Cowles v. McHugh*, 2014 WL 12767682, at *11 (reading *Thomson v. Merit Sys. Prot. Bd.*, 772

F.2d 879 (Fed. Cir. 1985) to say that courts can order relief when the agency is "necessarily compelled to grant" it.) Additional equitable factors also suggest remanding to the agency for another adjudication is unwarranted. Mr. Stevenson has been waiting for years for a discharge upgrade. *Cf. Simko*, 156 F. Supp. 3d at 316 (noting that the plaintiff had waited more than four years for resolution). It is also "unlikely the record in [Mr. Stevenson's] case would change if the agency was given an opportunity to conduct further investigation into the merits." *Id.*

In the alternative, this Court should vacate the ABCMR's decision and remand this case to the agency with clear instructions that (1) the ABCMR must apply liberal consideration to applications "based in whole or in part on matters relating to [SUD]," Kurta ¶ 3, (2) the ABCMR must find that Mr. Stevenson's SUD existed at the time of service and (3) the ABCMR must find that Mr. Stevenson's SUD explains and helps mitigate the AWOLs that led to his discharge. The Kurta Memo's mandatory evidentiary rules require the ABCMR to give the undisputed evidence supporting each of these conclusions determinative weight. *See supra* Section I.A.3. When a court concludes that "an administrative agency has made an error of law, the duty of the Court is to correct the error of law" before remanding the case to the agency. *Vogel v. Colvin*, No. 3:13-CV-01415-JAM, 2016 WL 1179269, at *1 (D. Conn. Mar. 28, 2016). Therefore, courts in the Second Circuit frequently provide instructions on remand that clarify the agency's legal obligations and establish which issues remain open to dispute in a new adjudication. *See, e.g. Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (instructing the Social Security Administration to consider the plaintiff's "nonexertional impairments" in disability evaluation); *Diana P. v. Saul*, No. 3:19-CV-593-CFH, 2020 WL 3971536, at *6 (N.D.N.Y. July 14, 2020) (enforcing previous order instructing agency to find that applicant's sleep apnea was severe); *Johnson v. Comm'r of Soc. Sec.*, No. 2:13-CV-217, 2014 WL 2118444, at *5 (D. Vt. May 21, 2014) (ordering agency to

apply the "treating physician rule" and providing specific instructions on how to weigh physician's testimony).

Finally, if this Court concludes that there are factual or legal questions remaining for the ABCMR to decide, it should instruct the agency to provide reasoned answers to these questions and respond to Mr. Stevenson's non-frivolous arguments. *Cf. Mufied v. Mukasey*, 508 F.3d 88, 93 (2d Cir. 2007) (vacating and remanding with an order that the agency "elaborate upon the . . . standard it has adopted and provide sufficient detail to guide both immigration judges and courts of appeals"); *Bradley v. Spencer*,  2019 WL 1567838, at *4 (vacating and remanding with an order that the ABCMR provide a reasoned explanation of its rationale); *Santiago v. Astrue*, No. 11 CIV. 6873 BSJ, 2012 WL 1899797, at *21 (S.D.N.Y. May 24, 2012) (remanding with instruction that agency must "expressly consider the relevant factors").

## CONCLUSION

Mr. Stevenson seeks much-needed clarity for himself and other veterans with SUD about the rules governing their discharge upgrade applications. The ABCMR's conclusory statement that SUD is not a "mitigating behavioral health condition under Liberal Consideration" is plainly inadequate. A.R. 13. This Court should instruct the ABCMR to comply with its own procedural guidance and provide all disabled veterans with equitable and procedurally sufficient opportunities to apply for discharge upgrades.