UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARK C. STEVENSON,
　　　*Plaintiff*,

　　　　*v.*

CHRISTINE E. WORMUTH, Secretary of the Army,
　　　*Defendant*.

Civil No. 3:22-cv-601 (JBA)

June 1, 2023

**RULING ON DEFENDANT'S MOTION TO REMAND**

Plaintiff Mark Stevenson filed suit under the Administrative Procedure Act and the Fifth Amendment Due Process and Equal Protection Clauses of the Constitution challenging Army Board for Correction of Medical Records' ("ABCMR") denial of his application for a discharge upgrade and moved for summary judgment [Doc. # 25] on September 30, 2022. Defendant Christine Wormuth, in her capacity as Secretary of the Army, has now moved for voluntary remand of the case to the ABCMR for further consideration, to stay any further summary judgment briefing, and for administrative closure of the case. [Doc. # 29.][1] Plaintiff opposes, maintaining that Defendant has not demonstrated any likelihood that the administrative proceeding will reach a different result if remanded for reconsideration, and that remand will cause him prejudice through further delay. [Doc. # 33.] For the reasons set forth below, Defendant's motion is GRANTED in part.

I.　　**Background**

　　A.　　**Army Enlistment and Discharge**

---

[1] Defendant initially indicated that she would cross-move for summary judgment and respond, but instead filed both a motion to remand and to stay full briefing of the summary judgment motions until an order on the motion to remand is issued [Doc. # 30].

Plaintiff enlisted in the Army in 1977 and was deployed to West Germany, during which time the Baader-Meinhof gang, which was opposed to the U.S. presence in Germany, carried out several terrorist attacks targeting and wounding or killing several U.S. service members. (Am. Compl. [Doc. # 19] ¶¶ 53-55.) Plaintiff alleges that the constant state of tension and fear from being stationed near the prison holding Baader-Meinhof leaders and from performing sensitive missions such as prisoner transports caused his mental health to deteriorate. (*Id.* ¶¶ 53-58.) Additionally, he alleges that he faced "intense racism" from both his fellow soldiers and locals outside the base. (*Id.* ¶¶ 60-63.) As a result, Plaintiff began "self-medicating" with alcohol, hashish, and eventually heroin, developing a substance use disorder ("SUD") for which he alleges the military "provided no accessible mental health or addiction counseling" treatment. (*Id.* ¶¶ 78-80.) His SUD resulted in 3 AWOL incidents, and his "Other than Honorable" discharge. (*Id.* ¶¶ 81-85.)

### B.      Post-Discharge Conduct

Following his discharge in 1983, Plaintiff struggled with his SUD for nearly 20 years until checking himself into a rehabilitation center. (*Id.* ¶¶ 90-93.) He completed a rehabilitation program in 2003 and began working again, as well as attending Narcotics Anonymous meetings as a member and as a leader. (*Id.* ¶¶ 94, 96.) Plaintiff also remarried, worked to repair relationships with his family, enrolled in college and earned an associate's degree, and became a certified substance use counselor. (*Id.* ¶¶ 97-99.) He now works as a substance abuse counselor at Connecticut Renaissance, has a clean criminal record, and has been substance free for almost 20 years. (*Id.* ¶¶ 100-102.) However, Plaintiff 's Other-than-Honorable discharge from the military "left him with no recourse within the veterans' system to seek help or support despite the service-connected nature of his SUD." (*Id.* ¶ 95.)

### C.      Upgrade Application

On April 6, 2020, Plaintiff applied to the Army Board for Correction of Medical Records (ABMCR) to request an upgrade of his discharge to "honorable," and a change in the narrative reason for discharge to "Secretarial Authority." (*Id.* ¶ 105.)

Relevant to Plaintiff's discharge upgrade application are three memoranda issued by the Secretary of Defense between 2014 and 2018 intended to guide the ABCMR's decision-making process. The first is the Sec'y of Def., *Mem. for Secretaries of the Military Departments, Supplemental Guidance to Military Boards for Correction of Military / Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder* (Sept. 3, 2014) (the "Hagel Memorandum"), which directed military review boards to give "special consideration" to PTSD diagnoses by the VA, and "liberal consideration" to diagnoses of PTSD by civilian providers when adjudicating discharge upgrade applications by veterans with PTSD diagnoses. That memorandum was codified in 10 U.S.C. § 1552(h)(2)(B), which requires ABCMR to review each case "with liberal consideration to the former member that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge of a lesser characterization."

The second memorandum is Sec'y of Def., *Mem. for Secretaries of the Military Departments, Clarifying Guidance to Military Discharge Review Boards And Boards for Correction of Military / Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment* (Aug. 25, 2017) (the "Kurta Memorandum"), which directs that "[l]iberal consideration . . . be given to veterans petitioning for discharge relief when the application relief is based in whole or in part on matters relating to mental health conditions, including PTSD, sexual assault; or sexual harassment." The memorandum set forth four questions that should be considered in discharge relief requests:

> a. Did the veteran have a condition or experience that may excuse or mitigate the discharge?

b. Did that condition exist/ experience occur during military service?

c. Does that condition or experience actually excuse or mitigate the discharge?

d. Does that condition or experience outweigh the discharge?

*Id.* The memorandum also details the kind of evidence that can be considered in reviewing the application, the presumptions that should be applied in determining whether there was a condition or experience that might excuse or mitigate discharge that existed during service, and how to determine and evaluate whether the condition excused or mitigated the discharge or outweighed it. *Id.* at 2-3.

The third memorandum issued was Sec'y of Def., *Mem. for Secretaries of the Military Departments, Guidance to Military Discharge Review Boards and Boards for Correction of Military / Naval Records Regarding Equity, Injustice, or Clemency Determinations* (July 25, 2018) (the "Wilkie Memorandum"), which provided that "[r]equests for relief based in whole or in part on a mental health condition, including post-traumatic stress disorder (PTSD); Traumatic Brain Injury (TBI); or a sexual assault or sexual harassment experience, should be considered for relief on equitable, injustice, or clemency grounds whenever there is insufficient evidence to warrant relief for an error or impropriety." *Id.* The memorandum noted that "[a]n honorable discharge characterization does not require flawless military service," and directed the ABCMR to consider, among other things, "[a]n applicant's candor," "[t]he aggravating and mitigating facts related to the record or punishment from which the veteran or Service member wants relief," "[p]ositive or negative post-conviction conduct," and "[e]vidence of rehabilitation." *Id.* at 3.

Plaintiff's application asserted that the Board should use a standard of "liberal consideration" based on the Hagel and Kurta memoranda because his SUD qualified as a mental health condition. (Am. Compl. ¶¶ 106-109.) Plaintiff's application brief also urged the

4

ABCMR to consider the Wilkie Memorandum's direction to consider requests for relief based in whole or in part on a mental health condition on equitable, injustice, or clemency grounds even where there was insufficient evidence to warrant relief for an error or impropriety, including consideration of factors like candor, acceptance of responsibility, character references, and conduct after discharge. (*Id.* ¶ 7.) In addition to citing to these memoranda, Plaintiff provided a copy of a psychological evaluation opining that he developed Alcohol Use Disorder and Opioid Use Disorder, subsets of SUD, during his service, and that his SUD contributed to his AWOLs; copies of his medical records; declarations in support of his character and attesting to his recovery; declarations detailing the substance abuse and suicide attempts that were common on the Germany base; and his own declaration as to his experience. (*Id.* ¶¶ 110-118.) His psychological evaluation includes citations to the documents reviewed by his evaluator, which include citations with URLs linking to reports regarding racism in the military also cited in Plaintiff's main application. (Administrative Record, Application Exhibit F [Doc. # 16-3] at 164-166.)

The ABCMR rejected his application on December 8, 2021. The ABCMR Record of Proceedings acknowledges Plaintiff's position that he has a "recognized mental health condition of substance abuse disorder," and that "the Department of Defense (DoD) has stated that mental health conditions previously unrecognized by the medical community, like post-traumatic stress disorder (PTSD) or SUD, can excuse or otherwise mitigate instances of misconduct." (Administrative Record, ABCMR Record of Proceedings, [Doc. # 16-2] at 6.) The record of proceedings also noted that Plaintiff's counsel argued that the "guidance set forth" in the Kurta Memorandum should "be liberally applied" to the case because "SUD like PTSD" should be treated with liberal consideration under the Kurta Memorandum. (*Id.* at 7.) In the "references" section, the ABCMR decision notes that the Kurta Memorandum directed review boards to "give liberal consideration to Veterans petitioning

for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions, including PTSD, traumatic brain injury (TBI), sexual assault, or sexual harassment. . . . Boards *are* to give liberal consideration to Veterans petitioning for discharge relief when the application for relief is based in whole or in part on those conditions or experiences." (*Id.* at 14) (emphasis added.)

The Army Board psychologist agreed that Plaintiff had "service-connected SUD" and that he "likely met the criteria for Alcohol Use Disorder and Opioid Use Disorder" during his service but refused to apply the liberal consideration standard, stating instead that Alcohol or Opioid Abuse Disorders were not "mitigating behavioral health condition[s] under Liberal Consideration." (Amend. Compl. ¶¶ 119-125.) There is no further explanation of why the disorders do not receive liberal consideration. (*Id.*) The "Board Discussion" section of the denial stated that ABCMR considered "published DoD guidance for consideration of discharge upgrade requests" but did not reference the Kurta Memorandum or any other memorandum by name. (ABCMR Record of Proceedings at 11.) Ultimately, ABCMR "concurred with the advising official and found insufficient evidence of in-service mitigating factors for the misconduct," but does not reference liberal consideration or analyze the four Kurta factors or explain why SUD is not a mental health condition that receives liberal consideration under the Kurta Memorandum. (*Id.* at 11-12.)

### D.   Procedural History

Plaintiff filed suit in April 2022, contending that the ABCMR wrongfully failed to classify SUD as a mental health condition that would warrant liberal consideration, and that the correct application of liberal consideration would result in a grant of his request. (*Id.* at 131-140.) Plaintiff further alleges that the ABCMR failed to consider the racial discrimination he faced, and that the military failed to address, as a mitigating factor. (*Id.* at 139-141.) Plaintiff alleges violations of APA § 706(2)(A) ("arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law"), (Am. Compl. ¶¶ 145-55); APA § 706(2)(B) (constitutional rights), (Am. Compl. ¶¶ 156-57); APA § 706(2)(C) ("in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"), (Am. Compl. ¶¶ 158-62); Section 504 of the Rehabilitation Act, via APA § 706(2)(A) & (C), (Am. Compl. ¶¶ 163-70); and Department of Defense regulations implementing the Rehabilitation Act, via APA § 706(2)(A) & (C), (Am. Compl. ¶¶ 171-74). His second claim alleges violations of the Fifth Amendment Due Process Clause and Equal Protection Clause.

## II.    Legal Standard

The court may "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that are "unsupported by substantial evidence," 5 U.S.C. § 706(2), and "the availability of judicial review of decisions of the Correction Board is not in doubt." *Blassingame v. Sec'y of Navy*, 811 F.2d 65, 69 (2d Cir. 1987). However, administrative agencies "have the inherent power to reconsider their own decisions." *Bradley v. Spencer*, No. 3:17-CV-495(RNC), 2019 WL 1567838, at *2 (D. Conn. Apr. 11, 2019). Remand at the agency's request should be granted "'(i) when new evidence becomes available after an agency's original decision was rendered, or (ii) where intervening events outside of the agency's control' may affect the validity of an agency's actions." *Morant v. McPherson*, No. 3:19-CV-1791 (VLB), 2020 WL 1974331, at *2 (D. Conn. Apr. 24, 2020) (citing *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 132 (D.D.C. 2010)).

The Court also has discretion to remand at the agency's request when the agency raises "substantial and legitimate" concerns in support of remand. "An agency's concerns are substantial and legitimate where (1) the agency provides a compelling justification for its remand request; (2) the need for finality does not outweigh the justification for voluntary remand presented by the agency; and (3) the scope of the agency's remand request is

appropriate." *Ad Hoc Shrimp Trade Action Committee v. United States*, 882 F. Supp. 2d 1377 (Ct. Int'l Trade 2013). Granting the motion is favored if remand "preserves scarce judicial resources by allowing agencies to 'cure their own mistakes.'" *Id.* (citing *Ethyl Corp. v. Browner*, 989 F.2d 522, 523 (D.C. Cir. 1993)). However, "if the agency's request is frivolous or in bad faith," or if remand would be futile because "there is not the slightest doubt that the [agency] would simply reaffirm its order," remand may be denied. *Bradley,* 2019 WL 1567838 at *2.[2]

Plaintiff and Defendant disagree on how to construe the standard for voluntary remand. Plaintiff maintains that "[a] reviewing court should only grant an opposed motion to remand when the government's reason is 'persuasive.'" (Pl.'s Opp'n to Mot. to Remand [Doc. # 33] at 6) (quoting *W.G.A. v. Sessions*, 900 F.3d 957, 963 (7th Cir. 2018)). In cases where there are neither intervening events outside the agency's control such as new legal decisions or new evidence, nor an admission of legal error on the agency's part, Plaintiff contends that the Court has "broad discretion to grant or deny" the remand motion. (*Id.* at 7) (quoting *Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018)). However, Defendant argues that "[d]enying an agency's voluntary remand is a rare, exceptional outcome," (Def.'s Reply [Doc. # 36] at 2), and that an "agency's voluntary request for remand may be denied **under limited circumstances**" such as for frivolity or bad faith (*Id.*) (quoting with emphasis *Bradley,* 2019 WL 1567838, at *2.)

It is true that even when there are no allegations that the remand is sought based on new evidence or admitted error, it is still well within the Court's discretion to remand based on the agency's desire to reconsider its prior position. *See Morant,* 2020 WL 1974331 at *2.

---

[2] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

In such cases, there is a slight presumption in favor of voluntary remand if it will preserve judicial resources and aid the court in ensuring that its determination is made on a fulsome agency record. *See Ethyl Corp*, 989 F.2d at 523. This presumption is strengthened here "[g]iven the substantial deference to be accorded the armed services in their personnel decisions." *Rahman v. United States,* 149 Fed. Cl. 685, 691 (2020). However, while it is also true as a matter of statistics that cases denying voluntary remand are rare, *see Trace Sys. Inc. v. United States*, No. 22-404 C, 2022 WL 2963486, at *4 (Fed. Cl. July 26, 2022), there is no requirement that the situation be extraordinary or exceptional to warrant a denial, nor is there an automatic presumption that remand is appropriate. To the contrary, "government motions for a voluntary remand to an agency for additional consideration should not simply be granted in a perfunctory manner. Rather, such motions should be treated as with any other motion affecting the substantial rights of the plaintiff, by subjecting the government's position to careful analysis to ensure that the motion is properly supported and justified." *Rahman,* 149 Fed. Cl. at 690.

## III.    Discussion

### A.    Defendant's Professed Reasons for Requesting Remand

Defendant requests that the Court remand to allow the ABCMR to re-evaluate Plaintiff's application and address three "substantial and legitimate" concerns: applicability of liberal consideration to SUD claims, Plaintiff's Section 504 claims, and the reports on racial discrimination issues in the Army that Plaintiff cited in his upgrade application brief but did not provide to the ABCMR in full. Plaintiff opposes, asserting that Defendant is seeking to "double down" on its challenged policy," "consider evidence [Plaintiff] chose not to submit," and "evade this Court's review of its decision." (Pl.'s Opp'n at 6.)

#### 1.    Liberal Consideration for SUD

Plaintiff argues that Defendant's desire to "explain its SUD policy in more detail is not a substantial reason for remand where the agency (1) refuses to change this policy on remand, (2) already had ample opportunity to explain its policy in its initial decision, and (3) has a complete administrative record." (Pl.'s Opp'n at 11.) Plaintiff contends that Defendant has not admitted error and that she has instead made "clear that [ABCMR] will defend its policy of denying liberal consideration to veterans with SUD," while seeking to "evade judicial review." (Pl.'s Opp'n at 13.) In support, Plaintiff points to *Keltner v. United States*, 148 Fed. Cl. 552, 564 (2020), in which the court held that when "the government simply wants an opportunity to improve either the reasoning the agency articulated for its decision or the record on which that decision was based," remand is not warranted, because granting remand "simply so that the AFBCMR can bolster its reasons for denying [plaintiff's] claim, presumably so that the AFBCMR's decision would then have a higher chance of withstanding subsequent judicial scrutiny," is "no justification at all." *Id.*

Defendant takes the position that "an agency may request a remand (without confessing error) in order to reconsider its previous position," *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1028-29 (Fed. Cir. 2001). However, the agency "does at least need to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge." *Limnia, Inc. v. United States Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017). Defendant has been less than clear on whether the agency will do any of those things; in her opening motion, Defendant argues that remand will allow ACBMR to "better articulate its rationale" regarding the Hagel, Kurta, and Wilkie memoranda because it was "silent" as to why "the Army does not consider [SUDs] to be a 'mental health condition' under the DOD's Hagel and Kurta Memoranda." (Def.'s Mem. in Support of Remand [Doc. # 29-1] at 1, 10.) Elaborating in reply, Defendant "explicitly agree[s]" that ABCMR's decision "did not consider all the relevant factors" plaintiff raised, and that its "articulation of its rationale for

10

not affording plaintiff's application liberal consideration was not fulsome." (Def.'s Reply at 2.) Defendant maintains that "while it is true that liberal consideration **has not been** given in cases solely involving SUD, the agency has not foreclosed a reconsideration of that legal position," and that it intends to reconsider that issue on remand. (*Id.* at 2-3) (emphasis in original.)

At oral argument, counsel maintained that ABCMR "did not fail to articulate a rationale" for its policy, and that it did not err in applying ABCMR's policy as it existed at the time but agreed that the Board did not explain *why* liberal consideration is not given to SUD claims, instead simply adopting the medical review psychologist's articulation of what the policy was. However, when asked if the Army *would* reconsider that policy, Defendant equivocated, responding that ABCMR would have the "opportunity" to revisit the policy, and that it had not "foreclosed" revisiting the policy and deciding to apply liberal consideration to mental health conditions other than TBI and PTSD, meaning that the result was not "predetermined." Later, counsel represented that the Army's "intention" was to reconsider whether mental health conditions other than TBI or PTSD were incorporated in liberal consideration standards but did not represent to the Court that such reconsideration would specifically include reconsidering the policy as it applied to SUD, which is the part of the policy relevant to Plaintiff.

Defendant compares this case to *Trace Sys. Inc.*, 2022 WL 2963486 at *3, where the agency asked for remand because it wished to reconsider both the decision to cancel a particular procurement contract, but also its general decision about whether to issue a procurement solicitation and its process for doing so. The court found that where "the agency genuinely desires to reconsider its position or correct any errors made, and it is undoubtedly in the best position to do so," the situation differed from the one in *Keltner* where the government requested remand only to "expound" on its rationale, rather than

truly reconsidering. *Id.* On this basis, *Trace* held that "the Court takes the government at its word that the agency will truly reconsider, as it is required to, its decisions. If for any reason that should not occur, Plaintiff may seek judicial intervention." *Id.*

While the agency's position has not been a model of clarity or forthrightness, it has at least expressed a doubt about "the correctness of its decision or that decision's relationship to the agency's other policies," *SKF USA Inc.* 254 F.3d at 1029, and professed an intent to have ABCMR "re-review" its decision to determine whether a policy change is warranted that would impact Plaintiff's application. Given that Defendant was unable to articulate at oral argument what exactly the policy *was* with regard to which mental health conditions other than TBI or PTSD might be currently receiving liberal consideration, or what criteria are used to determine which conditions qualify and which do not, remand to the agency serves the broader purpose of giving the agency the chance to clearly and definitively articulate both its policy and its rationale on the record for the Court's review, rather than having the Court decide whether the policy is legally sound based solely on one application without broader context. *See Rahman,* 149 Fed. Cl. at 690 (exercising discretion to remand when the agency "might well conclude" its prior decision was an error, and if it did not, there were still questions that "the ABCMR should resolve in the first instance"); *Kennedy v. Speer,* 3:16-cv-2010, Order on Def.'s Mot. to Dismiss Or, in the Alternative, Voluntary Remand [Doc. # 29], (D. Conn. Sept. 19, 2017) (granting a motion for remand where it was "unclear" whether the agency had applied the guidance from the *Hagel* memoranda as required to the plaintiffs' discharge upgrade applications or provided plaintiffs with "full and proper consideration of the applications", which it was provided with the opportunity to do on remand.)

The need for clarity on what the agency's ultimate policy is and whether that policy is in compliance with the Hagel, Kurta, and Wilkie memoranda is a compelling reason for remand. *See Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[i]f the record before

the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") However, in addition to a compelling justification for the request, the "scope of the agency's remand request" must be "appropriate." *Keltner,* 148 Fed. Cl. at 564. An open-ended request for the "opportunity" to *possibly* reconsider the SUD policy on remand, in light of Defendant's hesitancy to represent explicitly to the Court that the ABCMR *will* reconsider its policy of not giving SUD cases liberal consideration, is a request for a blank check, not a narrowly tailored request. Defendant represented in its reply that "whether plaintiff's application claiming substance use disorder will be afforded 'liberal consideration' is an open question, and one of the issues that the agency intends to reconsider on remand." As such, any remand will *require* (without dictating any particular result) that the agency answer that "open question" and reconsider whether substance abuse disorder cases should be afforded liberal consideration.

### 2.    Section 504 Claim

Second, Defendant contends that the ABCMR was not able to consider the Rehabilitation Act Section 504's applicability to its SUD policy because the Plaintiff did not assert that claim at the application stage, and that the Army has never considered the application of Section 504 to applications for discharge upgrades before. (Def.'s Mem. at 9-10.) Defendant recognizes that the Plaintiff likely did not raise the Section 504 issue in his application because the ABCMR had not yet issued an adverse decision denying the applicability of liberal consideration to his SUD; however, Defendant maintains that regardless of why the argument was not raised, it has "not yet considered the issue through its administrative process," and it should be given the opportunity to do so because the "APA favors agencies having the first opportunity (before the judiciary) to decide legal and factual

issues." (*Id.* at 10.) Plaintiff, however, contends that there is no reason to remand so that the ABCMR adjudicators can consider the Section 504 arguments because there is no administrative exhaustion requirement for the claim, ABCMR adjudicators are not attorneys with expertise in the Rehabilitation Act whose interpretations are entitled to *Chevron* deference, and any need for articulation of Defendant's legal position on the issue can be done through summary judgment briefing. (Pl.'s Opp'n at 9-10.)

Although some courts have held that generally, a Section 504 claim is subject to an exhaustion requirement if it is brought through the vehicle of the APA, *see, e.g., Mendez v. Gearan,* 947 F. Supp. 1364, 1366 (N.D. Cal. 1996) (finding that if the plaintiff's Section 504 claim was being brought under the APA, rather than as a standalone private right of action under Section 504, the court would "have to dismiss this case for failure to exhaust administrative remedies,") several courts have found that administrative exhaustion in military discharge cases is "permissive, rather than mandatory." *See Jarrett v. White*, No. CIV.A. 01-800-GMS, 2002 WL 1348304, at *5 (D. Del. June 17, 2002), *aff'd sub nom. Jarrett v. Brownlee*, 80 F. App'x 107 (Fed. Cir. 2003); see also *Crane v. Sec'y of Army*, 92 F. Supp. 2d 155, 163 (W.D.N.Y. 2000) (plaintiffs are "not required to exhaust all available remedies before seeking judicial review of military decisions under the APA."). Courts have also found that when the issues involved are "purely legal, requiring no exercise of military discretion or expertise," then administrative exhaustion is not required. *Committee for GI Rights v. Callaway*, 518 F.2d 466, 474 (D.C. Cir. 1975); *see also Roth v. Austin*, 619 F. Supp. 3d 928, 960 (D. Neb. 2022) (administrative exhaustion is not required for a facial challenge to a military policy).

Even assuming that it would apply to this case, the APA's exhaustion requirement, 5 U.S.C. § 704, requires that "an agency action must be final before judicial review of that decision is available," *Brezler v. Mills*, 86 F. Supp. 3d 208, 211 (E.D.N.Y. 2015), which means

that exhaustion requires only that the party has first sought "all possible relief within the agency itself." *Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992). Under 32 C.F.R. § 581.3 (g)(2)(i), a decision by ABCMR is a "final action" when it denies an application. "[O]nce an agency action becomes final, a plaintiff need not seek further review within the agency before seeking judicial review, unless a specific statute requires otherwise," and "[i]n the present case, there is no question that [further] exhaustion is not required by statute." *Brezler,* 86 F. Supp. 3d at 215. Plaintiff cannot have been required to raise the Section 504 argument in the first instance in his application, because he did not yet know that it was the agency's policy to deny liberal consideration to SUD claims, or even that there *was* such a policy. To adopt Defendant's position here would be akin to finding that administrative exhaustion requires litigants to preemptively predict every way in which an agency decision may violate the law and put the agency on notice of that possibility; Defendant presents the Court with no authority to support that position.

However, even if Plaintiff was not required to raise the issue at the application stage, whether ABCMR's policy of not applying liberal consideration to SUD cases implicates Section 504 presents another situation in which the Court may benefit from having a "full administrative record." (Def.'s Reply at 5.) As explained above, the question of why the agency has enacted such a policy and in particular, any reason the agency might provide as to why SUD is treated differently from other mental health conditions will unquestionably be relevant to the analysis of whether that policy violates Section 504. As such, the agency's re-review of Plaintiff's application with Section 504 in mind as one of the "relevant factors" for ABCMR to consider weighs slightly in favor of remand. (*Id.* at 2.)

### 3.    Racial Discrimination Reports

Finally, Defendant requests remand based on "new evidence" in the form of "two reports that plaintiff describes in his amended complaint" that the agency "did not have

15

before it" when making its decision. (Def.'s Mem. at 1-2.) The two reports the agency refers to are the "Department of Defense report from the 1970s" which document "extensive discrimination in the military in the era in which Stevenson served," and the "U.S. Army Research Institute report" which tracked a 'trend of a slowly worsening racial climate' from 1976 to 1978" that Plaintiff refers to in paragraphs 66 and 67 of the Amended Complaint. (*Id.*) Plaintiff responds that the reports were both already available to the ABCMR, that they were cited in full as part of his application briefing, and that the reports were meant to "supplement" his testimony about the racism he faced, but that they do not represent "critical evidence the agency did not have the opportunity to review." (Pl.'s Opp'n at 14.) Rather, Plaintiff maintains that ABCMR had "everything necessary" to issue its decision, but instead "chose to ignore Mr. Stevenson's racial discrimination claims and has not guaranteed that it will not do so again on remand." (*Id.*)  Defendant replies that the reports are new evidence because the ABCMR "**did not have** full copies of the reports during its administrative adjudication," and that Plaintiff's position that the reports were merely peripheral is inconsistent with his argument that the ABCMR did not accord them sufficient weight. (Def.'s Reply at 7) (emphasis in original).

This factor does not weigh in favor of remand. The facts themselves are not technically new; as Plaintiff notes, the two reports had both been published at the time the ABCMR decision was made and were cited and quoted in Plaintiff's brief submitted in support of his discharge upgrade application. (Administrative Record [Doc. # 16-2] at 40.) The Defendant's assertion in her reply brief that she "has endeavored—unsuccessfully—to find and review" the reports in their entirety is puzzling given that they were cited *with URLs* at page 160 of the administrative record as citations in the psychiatric evaluation of Mr. Stevenson submitted with his initial application, and Plaintiff's counsel represented at oral argument that they are available on Google. (Def.'s Reply at 7.) This failure of diligence, in

the face of Defendant's position that these reports are important enough to warrant remand to consider them, raises doubts on the sincerity of Defendant's professed desire to have ABCMR consider these materials and faithfully reconsider the agency's position based on their contents, and thus does not weigh in favor of remand.

### B.     Exercise of the Court's Discretion

Defendant has represented that ABCMR will re-review Plaintiff's application, and that ABCMR will have the "opportunity" (although Defendant does not commit ABCMR to actually availing itself of this opportunity) to reconsider whether its policy of not applying liberal consideration to SUD cases is consistent with the Hagel, Kurta, and Wilkie memoranda, as well as Section 504. This representation gives the Court discretion to remand. However, "[a]n agency's professed intent to revisit the challenged decision is a *necessary* condition to obtain remand, but it is not always a *sufficient* condition," and the Court must still "consider whether remand would unduly prejudice the non-moving party" and whether "the agency's request appears to be frivolous or made in bad faith." *Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 98–99 (D.D.C. 2019) (emphasis added).

The "timing of the government's motion" to remand is one factor the Court may consider in evaluating whether the motion should be granted. *Keltner*, 148 Fed. Cl. at 563; *see also Tandap v. Barr,* 825 F. App'x 391, 394 (7th Cir. 2020) (finding that the government's motion for voluntary remand to the Board of Immigration Appeals to allow it to "clarify its rationale" without admitting error came "far too late" when not filed until the day its response brief to the plaintiff's petition for review was due). Defendant maintains that her request is timely made as the "omissions" prompting the request for remand were uncovered during preparation of her substantive defense and is in good faith based on identification of "legal concepts and evidentiary issues that [the agency] intends to address on remand." (Def.'s Mem. at 12.) Plaintiff, however, contends that the timing is unjustified, as the motion

to remand came "nearly seven months" after the filing of the original complaint, four months after the certified administrative record was filed, and over a month after Plaintiff moved for summary judgment on the same day that Defendant's cross-motion for summary judgment and response to Plaintiff's summary judgment motion was due. (Pl.'s Opp'n 16-17.) Defendant argues in reply that although a summons was executed serving Defendant with the complaint on May 2, 2022, her counsel did not file an appearance until July 5, 2022, four months before the motion for remand was filed, and that the motion was made "based on the exercise of diligence," albeit "after initially (in good faith) believing that it would cross-move for summary judgment." (Def.'s Reply at 6.)

This argument is unpersuasive. Defendant fails to explain why four months were needed between when the administrative record was filed and the filing of her 15-page motion to determine that voluntary remand might be warranted; the issues are not particularly complex or novel, nor is the administrative record particularly voluminous, and the delay essentially gives the ABCMR additional time beyond the statutory deadline to consider Plaintiff's application. *See Keltner,* 148 Fed. Cl. at 568 (declining to "unfairly give the government the opportunity to restart the clock in order to bolster its defense with a post-hoc rationalization" where the complaint had already been pending for six months before the motion for remand was filed, and the defendant sought another 6 months to reconsider its decision); *Wheeler*, 427 F. Supp. 3d at 100 (declining to remand when granting the request would "effectively allow EPA to circumvent the statutory requirement to receive comments and issue a determination 'within 90 days' of receiving an application from the state"). Thus, the timing of the motion is not in Defendant's favor.

The delay has also not come without prejudice; Plaintiff points out that he has been engaged in the process of trying to obtain a discharge upgrade for more than two and a half years now, and that "[e]very day" of delay renders him subject to "the stigma of exclusion

from the community of veterans" and "ineligible for Peer Specialist or Counselor jobs at the VA that would allow him to pursue his 'passion and life's mission' of helping fellow veterans with SUD recover." (Pl.'s Opp'n at 18-19.) Defendant argues that the delay is not "unduly" prejudicial because Plaintiff "has not made a showing that time is 'of the essence' and fails to explain or excuse his own role respecting the most significant delays," primarily because he does not explain "why it took him until 2020" to apply to the ABCMR for relief. (Def.'s Reply at 9.) This argument is unworthy. Defendant inexplicably avoids acknowledging what Plaintiff made clear in the Amended Complaint and at oral argument: his rehabilitation journey is a long one that has been one plagued by the effects of SUD and the mental health struggles he still endures, and the process of gathering the numerous materials he submitted to the ABCMR, including obtaining official diagnoses in 2019 and finding legal counsel to assist with his application, took time as well.

Defendant does not present the Court with a record beyond reproach; she has failed to explain her delay, dismissed Plaintiff's legitimate concerns of prejudice, and her representations about the unavailability of the racial discrimination reports despite citations to them in the record call into question her diligence. However, "[a]s there is a great deal of space on the discretion continuum between whether a remand request is 'substantial and legitimate' or is 'in bad faith or frivolous,' the Court need not decide where on that spectrum the request at issue lies," *Keltner*, 148 Fed. Cl. at 566, because the functional considerations counsel in favor of remand for two reasons.

First, if the Court proceeded to ruling on the summary judgment motion now, it would do so without the benefit of having a full understanding of whether the Army and ABCMR have actually adopted a formal policy that SUD is not a mental health condition entitled to liberal consideration, which individual or group articulated that policy, whether it is consistently applied, how the Kurta and Hagel Memoranda are applied in other cases,

whether the ABCMR has any general criteria for determining what a qualifying "mental health condition" is, and how other mental health conditions aside from PTSD or sexual assault cases are treated as compared to SUD; the absence of this information in the record would significantly impact the Court's ability to rule on a summary judgment motion, especially one in which the Court will be asked to determine if the agency's action was "arbitrary and capricious."

Further, even if the Court found on summary judgment that ABCMR erred because it failed to consider the Kurta Memorandum or because liberal consideration should have been applied, the Court cannot order a specific result as to the outcome of Plaintiff's application; the remedy would instead be remand to the agency to reconsider Plaintiff's case while applying the correct standard under the Kurta Memo. As such, remand tailored with specific instructions to Defendant "might produce a quicker ultimate decision on the merits, making a remand now a more efficient means of resolving the plaintiff's claim promptly." *Rahman*, 149 Fed. Cl. at 690. Remand will also ensure that there is no dispute over the proper exhaustion of Plaintiff's Section 504 claim and will ensure that if the administrative decision returns for further judicial review, the agency's articulated reason for denying his application is clear for the Court's review on a complete record. *See Trace,* 2022 WL 2963486, at *4 (granting voluntary remand when even if the court proceeded to rule on the summary judgment motions, the injunctive relief "would be nearly identical: a remand to the agency" that would require it to reconsider). Because the decision on remand "will either resolve plaintiff's upgrade request or prepare it for the Court's review," the Court will grant the motion to remand. (Def.'s Reply at 8.)

However, to balance the importance of avoiding further delay to Plaintiff with the Defendant's desire to reconsider, the Court denies Defendant's request that the ABCMR be permitted to follow its "standard timeline, in light of its existing caseload and constraints on

the agency" and that the case be administratively closed in the meantime. (Def.'s Reply at 9); *see Keltner,* 148 Fed. Cl. at 566 n. 13 (noting that 180 days to reconsider was unwarranted when the "government thus seeks the maximum length of time . . . without any acknowledgement that [plaintiff's] Complaint has been pending for six months or that [plaintiff] filed his appeal with the AFBCMR approximately five years prior to the date the government filed its motion."); *Holmes*, 142 Fed. Cl. at 794 (noting that "[i]n several instances, our court has remanded matters to military corrections or review boards for periods ranging from 90 to 120 days.") Plaintiff's request for an abbreviated timeline is granted, and Defendant's request to administratively close the case is denied. The scope of the remand is also tailored below to address Plaintiff's concerns about the agency's lack of clarity regarding what exactly its re-review will encompass.

## IV.   Conclusion

In accordance with the Defendant's reasons for its motion to remand, which is GRANTED, Plaintiff's application is remanded to the Secretary of the Army, who shall promptly resubmit Plaintiff's application to ABCMR which shall:

1.   Reconsider and determine whether SUD is a qualifying "mental health condition" entitling Plaintiff's application to liberal consideration under the Hagel, Kurta, and Wilkie memoranda, and/or whether ABCMR's existing policy of not applying liberal consideration to SUD claims violates Plaintiff's rights under Section 504 of the Rehabilitation Act;

2.   In reviewing Plaintiff's application, consider the reports and articles on racial discrimination cited in Plaintiff's application: (1) *A Second Study of Race Relations/Equal Opportunity Training in USAREUR (U.S. Army Europe)*, U.S. Army Research Institute for the Behavioral and Social Sciences (1979), https://apps.dtic.mil/sti/pdfs/ADA133079.pdf, and (2) *Report of the Task Force on the Administration of Military Justice in the Armed Forces* (1972). Retrieved                                                      from https://babel.hathitrust.org/cgi/pt?id=mdp.39015036025669   &view=   1

up&seq=9, as well as any further materials Plaintiff submits for the Board's consideration.[3]

Defendant's request for 180 days on remand is DENIED. Within 30 days of this ruling, Plaintiff shall submit all materials for the ABCMR's review; ABCMR shall issue its decision within 90 days of receiving Plaintiff's materials. The parties shall file a status report within 14 days of the agency decision advising whether Plaintiff will proceed with suit or whether the dispute has been resolved. The Court DENIES Defendant's request to administratively close the case.

Plaintiff's summary judgment motion [Doc. # 25] is denied without prejudice to renew based on the agency's final determination. Defendant's motion to stay summary judgment briefing [Doc. # 30] is denied as moot.

---

[3] Defendant argues that the Court should not impose specific requirements or order consideration of the Hagel, Kurta, or Wilkie Memorandum on remand because it "ha[s] no jurisdiction to order specific relief," *Berge v. United States*, 949 F. Supp. 2d 36, 42 (D.D.C. 2013). However, tailoring the *scope* of the remand order based on the agency's representations is entirely appropriate so long as it does not direct a particular *outcome* or specific relief—only commits the agency to what Defendant has already agreed it will do. *See Trace Sys. Inc.*, 2022 WL 2963486, at *5 (tailoring the remand order to direct reconsideration of particular decisions and information.)

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of June, 2023